**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NORMAN ANTHONY HALL,
Petitioner,

v.

No. 98-1924

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A34-359-272)

Argued: December 3, 1998

Decided: February 8, 1999

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge,
and WILLIAMS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Dismissed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Motz and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Karen Theresa Grisez, FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON, Washington, D.C., for Petitioner. Earle
Bronson Wilson, Office of Immigration Litigation, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent. **ON BRIEF:** Frank W. Hunger, Assistant

Attorney General, Allen W. Hausman, Senior Litigation Counsel, H. Bradford Glassman, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

WILKINSON, Chief Judge:

Petitioner Norman Anthony Hall appeals his final order of deportation. Hall was ordered to be deported because of his conviction of making false statements to a federally licensed firearms dealer in connection with the purchase of a firearm. Because we determine that Hall is an alien convicted of a deportable firearms offense, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 divests this court of jurisdiction to hear his case. We therefore dismiss Hall's petition.

I.

Hall, a citizen of Jamaica, immigrated to the United States in 1974. On January 24, 1991, Hall and three other individuals were indicted on firearms charges in the United States District Court for the Eastern District of Virginia.

According to the indictment, Hall and his companions went together to a federally licensed firearms dealer in Carrollton, Virginia. One of Hall's cohorts, Donald George Tucker, selected four handguns for purchase. Another member of the party, Clifton Spencer Longshore, then purchased those handguns for Tucker. During the transaction Hall aided and abetted Longshore in representing that Longshore, not Tucker, was the true purchaser of the handguns.

Hall was indicted for making and for conspiring to make a false statement to a federally licensed dealer in connection with a firearms purchase. He pled guilty to the false statement count, 18 U.S.C. § 922(a)(6), and the conspiracy count was dropped. Hall was sentenced to pay a $500 fine and to perform community service.

On April 19, 1995, the Immigration and Naturalization Service (INS) issued an Order to Show Cause for Hall's deportation. After a hearing, an immigration judge found Hall deportable pursuant to section 241(a)(2)(C) of the Immigration and Nationality Act (INA), which makes a conviction "under any law of purchasing . . . or of attempting or conspiring to purchase . . . any . . . firearm" a deportable offense. 8 U.S.C.A. § 1251(a)(2)(C) (1997). The Board of Immigration Appeals (BIA) affirmed the immigration judge's order and dismissed Hall's appeal on May 27, 1998. The next month the INS instructed Hall to appear for deportation.

Hall then filed a petition in this court for review of his deportation order, along with a motion for a stay of deportation. The INS opposed these motions, arguing that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546, precludes judicial review of Hall's deportation order. A panel of this court granted the stay pending briefing and argument of the case. We now dismiss Hall's petition for want of jurisdiction.

II.

We first must consider IIRIRA's effect on our jurisdiction over Hall's appeal. Before the enactment of IIRIRA, judicial review of final deportation orders was governed by section 106 of the INA, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. Enacted on September 30, 1996, IIRIRA repealed section 106 and replaced it with revised rules for judicial review. See IIRIRA § 306. Although most of IIRIRA's changes did not take effect until April 1, 1997, the Act also included transitional rules for judicial review. Those rules apply to aliens who were already in deportation proceedings before April 1, 1997, and whose final deportation order was entered more than thirty days after September 30, 1996. IIRIRA§ 309(c)(1), (4) (as amended).

The parties agree that IIRIRA's transitional rules apply to this case because Hall was in deportation proceedings before April 1, 1997, and because his deportation order did not become final until May 27, 1998. The transitional rules provide that

3

there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of [September 30, 1996]).

IIRIRA § 309(c)(4)(G).**1** On September 30, 1996, section 241(a)(2)(C) of the INA classified as deportable

> [a]ny alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm.

8 U.S.C.A. § 1251(a)(2)(C) (1997).**2** In other words, an alien who commits a firearms offense covered by INA § 241(a)(2)(C) is deportable and is entitled to "no appeal."

The INS asserts that Hall's offense of conviction is a firearms offense within the definition of INA § 241(a)(2)(C), and therefore that IIRIRA divests this court of jurisdiction over this case. We agree that IIRIRA removes our jurisdiction over the appeals of those aliens who are deportable by reason of their conviction of certain offenses. The jurisdiction-limiting provision, however, is triggered only by the existence of the following jurisdictional facts: whether the petitioner is an alien, and whether he has been convicted of one of the enumerated offenses. The majority of circuits that have considered the matter have concluded that courts retain jurisdiction in such cases to determine whether these jurisdictional facts are present. See Magana-

_____

**1** This provision is nearly identical to IIRIRA's permanent provision barring judicial review of the final removal orders of certain criminal aliens, INA § 242(a)(2)(C), 8 U.S.C.A. § 1252(a)(2)(C) (West Supp. 1998), which applies to those proceedings that began on or after April 1, 1997, see IIRIRA § 309(a), (c)(1).

**2** This section has been redesignated as INA § 237(a)(2)(C) and now appears at 8 U.S.C.A. § 1227(a)(2)(C) (West Supp. 1998).

Pizano v. INS, 152 F.3d 1213, 1216, amended by 159 F.3d 1217 (9th Cir. 1998); Okoro v. INS, 125 F.3d 920, 925 & n.10 (5th Cir. 1997); Yang v. INS, 109 F.3d 1185, 1192 (7th Cir. 1997) ("When judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists."), cert. denied, 118 S. Ct. 624 (1997).**3** In this case, our jurisdiction turns on whether Hall is "an alien who is . . . deportable by reason of having committed a criminal offense covered in" INA § 241(a)(2)(C). IIRIRA § 309(c)(4)(G). If we determine that he is, then we must dismiss his petition.

Although the Tenth Circuit applied a more restrictive view of its jurisdiction in Berehe v. INS, 114 F.3d 159 (10th Cir. 1997), the INS does not urge us to follow that approach, and we would decline to do so in any event. In Berehe the Tenth Circuit read IIRIRA § 309(c)(4)(G) to preclude aliens from even filing an appeal, and thus refused to consider even threshold issues of jurisdictional fact. Id. at 161. This interpretation goes beyond the language of the provision. IIRIRA does not declare that the agency's determinations of alienage and deportability are final and unreviewable. See Yang, 109 F.3d at 1192. It merely says there will be no appeal in certain classes of cases. To determine whether we have jurisdiction over this case, then, we must examine whether it falls within one of those classes. This requires that we examine the aforementioned jurisdictional facts.

_____

**3 Okoro** and Yang involved § 440(a) of AEDPA, 8 U.S.C.A. § 1105a(10) (1997), which amended the pre-IIRIRA INA to remove the courts' jurisdiction to review criminal aliens' final orders of deportation. Because this judicial review provision is nearly identical to IIRIRA § 309(c)(4)(G), the rationale of these cases is directly relevant to the issue before us. See Magana-Pizano, 152 F.3d at 1216 (applying IIRIRA's transitional rules and citing Yang).

Indeed, although neither party argues the point, it appears that AEDPA § 440(a) also applies to this case. See IIRIRA § 309(c)(1)(B) (deportation proceedings that began prior to April 1, 1997, "including judicial review thereof[,] shall continue to be conducted" under the pre-IIRIRA INA). Because we hold that the jurisdictional inquiry under the two provisions is the same, however, there is no difference in the result.

5

III.

There is no dispute that Hall is an alien. The question in this case is whether Hall's offense is one of those over which IIRIRA removes our jurisdiction. We hold that it is.

As we have noted, IIRIRA's roster includes INA § 241(a)(2)(C), which classifies convictions "under any law of purchasing . . . or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any . . . firearm" as grounds for deportation. We construe this statute in accordance with its plain meaning, and its language is exceedingly broad. See Kofa v. INS, 60 F.3d 1084, 1088-89 (4th Cir. 1995) (en banc). Its comprehensive list of gerunds captures all varieties of conduct relating to firearms transactions. It includes inchoate as well as completed offenses, enumerating not only the sale, use, ownership, or possession of firearms, but also any attempt or conspiracy to do so. Finally, it encompasses convictions "under any law" of engaging or attempting to engage in such transactions. This wide-ranging text evinces an expansive purpose -- to render deportable those aliens that commit firearms offenses of any type.

The history of the firearms provision confirms this conclusion. INA § 241(a)(2)(C) is the product of successive congressional efforts in the first half of this decade to expand the definition of a deportable firearms offense. Before 1990 the INA listed only "possessing or carrying" any firearm as bases for deportation. 8 U.S.C.A. § 1251(a)(14) (1990). In its comprehensive revision of section 241, however, the Immigration Act of 1990 augmented this definition to include "purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying" any firearm. See Pub. L. No. 101-649, § 602(a)(2)(C), 104 Stat. 4978, 5080. And in 1994, Congress "clarified" the firearms provision by adding attempts and conspiracies to the list of deportable grounds. See Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 203(b), 108 Stat. 4305, 4311. The obvious goal of each revision was to expand and to close gaps in INA's firearms-related grounds for deportation.

Given the language and purpose of INA § 241(a)(2)(C), we hold that it encompasses Hall's offense of conviction. Hall was convicted of violating 18 U.S.C. § 922(a)(6), which makes it unlawful "for any

6

person in connection with the acquisition or attempted acquisition of any firearm . . . knowingly to make any false or fictitious oral or written statement." Although he attempts to characterize this statute as a "false statements" rather than a "firearms" offense, Hall's false statements were not made in a vacuum. Rather, Hall made those statements "in connection with the acquisition or attempted acquisition of [a] firearm." Id. Because an attempted firearms acquisition was an essential element of his conviction, Hall committed a firearms offense within the meaning of section 241(a)(2)(C).

Hall acknowledges that unlawful firearms acquisitions "frequently" go hand-in-hand with false statements to firearms dealers. He insists, however, that the facts of his own case do not constitute a deportable offense, since it was not he but one of his companions who actually purchased the handguns. For his conduct to trigger section 241(a)(2)(C), Hall suggests, he not only need have made false statements in connection with a firearms purchase, he must also have been the individual doing the buying. Hall asks that we look at the facts of his case and reach our own judgment as to whether those facts satisfy section 241(a)(2)(C).

Nothing on the face of section 241(a)(2)(C), however, limits the statute to the actual purchaser of the firearm. Rather, it classifies as deportable "any alien" who is convicted "under any law" of purchasing or attempting to purchase "any . . . firearm." By pleading guilty to the section 922(a)(6) charge, Hall admitted involvement in just such a transaction -- he participated in and enabled an unlawful purchase of a firearm. Section 241(a)(2)(C) does not exclude the mode of participation in which Hall indisputably engaged.

Hall's approach would expand the concept of jurisdictional facts to the point where IIRIRA § 309(c)(4)(G)'s divestiture of jurisdiction would lose all meaning. In examining whether a conviction triggers INA § 241(a)(2)(C) a court could consider a broad spectrum of material, such as "the charging papers, the plea transcript, the record of trial, perhaps [even] evidence in the deportation proceedings." Yang, 109 F.3d at 1193 (deferring judgment on the point). We believe that we must consider jurisdictional facts to determine our own jurisdiction. But where, as here, a criminal statute on its face fits the INA's deportability classification, all convictions under that statute necessar-

7

ily render an alien deportable. To go beyond the offense as charged and scrutinize the underlying facts would change our inquiry from a jurisdictional one into a full consideration of the merits. Such an approach would fly in the face of the jurisdiction-limiting language of IIRIRA.

We therefore hold that we should look only to the offense of conviction itself to determine whether we have jurisdiction. This is not a novel approach. Indeed, even before IIRIRA and AEDPA removed our jurisdiction over these cases, this court looked to the "inherent nature of the offense rather than the circumstances surrounding the transgression" to determine whether a crime was one of moral turpitude for the purposes of the predecessor to INA§ 241(a)(2)(A)(i). Castle v. INS, 541 F.2d 1064, 1066 & n.5 (4th Cir. 1976) (courts "need not go beyond . . . the indictment, plea, verdict and sentence"); see also Okoro, 125 F.3d at 926 (post-AEDPA, examining only "the inherent nature of the crime, as defined in the statute concerned"). Here, we have concluded that section 922(a)(6) on its face is a deportable firearms offense under INA § 241(a)(2)(C). We need look no further.

IV.

Hall contends that this result offends the Constitution's Due Process Clause. Yet Hall has received all of the process that the Constitution requires -- perhaps more. He had notice of the charges against him and an opportunity to be heard before an immigration judge.**4** He had appellate review in the Board of Immigration Appeals. Furthermore, an Article III court has now determined that his offense of conviction renders him deportable.

_____

**4** Hall argues that his notice was defective because the INS quoted the wrong version of the INA in his Order to Show Cause. The order, however, did cite the statutory authority for his deportation -- INA § 241(a)(2)(C). This was sufficient to give Hall notice of the charge he faced.

Hall also initially claimed that the BIA based its finding of deportability on a crime for which he was not charged. The BIA has since corrected its error, and this claim is now moot.

To the extent that Hall is claiming that the Constitution compels this court to examine the facts underlying his conviction, he is incorrect. The Supreme Court has long said in the immigration context that Congress is generally free to leave final factfinding in the executive branch. See Carlson v. Landon, 342 U.S. 524, 537-38 (1952) ("The power to expel aliens, being essentially a power of the political branches of government, . . . may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." (internal quotation marks omitted)); see also Yang, 109 F.3d at 1196-97; Boston-Bollers v. INS, 106 F.3d 352, 355 (11th Cir. 1997); Duldulao v. INS, 90 F.3d 396, 400 (9th Cir. 1996). Consequently, IIRIRA's removal of our authority to review the facts underlying Hall's petition does not pose a constitutional problem.

V.

Because Hall is an alien who committed an offense that renders him deportable under INA § 241(a)(2)(C), IIRIRA § 309(c)(4)(G) divests this court of jurisdiction over his appeal. Hall's petition is therefore

DISMISSED.

9