**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ELVIS DAVID LEWIS,
Petitioner,

v.

No. 99-1116

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A76-594-192)

Argued: June 10, 1999

Decided: October 14, 1999

Before WIDENER, NIEMEYER, and TRAXLER, Circuit Judges.

_____

Dismissed by published opinion. Judge Traxler wrote the opinion, in
which Judge Widener and Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Lee P. Gelernt, AMERICAN CIVIL LIBERTIES
UNION, New York, New York; Randall Lee Johnson, JOHNSON &
ASSOCIATES, Arlington, Virginia, for Petitioner. Michelle Elizabeth
Gorden, Office of Immigration Litigation, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent. **ON BRIEF:** David W. Ogden, Acting Assistant Attor-
ney General, David M. McConnell, Assistant Director, Office of

Immigration Litigation, Civil Division, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

TRAXLER, Circuit Judge:

Elvis Lewis ("Lewis"), a citizen of Grenada, petitions for review of a final order of removal based on a 1984 conviction for conspiracy to distribute marijuana in violation of Maryland's controlled substance laws. Because we lack subject matter jurisdiction to review the order of deportation, we dismiss the petition.

I.

Lewis entered the United States in 1981 on a nonimmigrant business permit, which allowed him to stay for one month. After the one-month period expired, Lewis simply remained here. He has never been admitted to the United States as a lawful permanent resident.

In 1984, Lewis pled guilty in the Maryland Circuit Court for Anne Arundel County to conspiracy to possess marijuana with the intent to distribute. Lewis received a suspended three-year sentence, was ordered to pay a $1000 fine, and was placed on probation. Lewis completed probation and continued to remain in the United States. In September 1998, he was convicted in Maryland circuit court of embezzlement resulting in a 180-day sentence, 175 days of which were suspended. Although Lewis's embezzlement conviction did not serve as the basis for his order of removal, it was apparently this event that triggered an investigation of Lewis by the Immigration and Naturalization Service (the Service), culminating in the removal order.

In December 1998, the Service took Lewis into custody and placed him in expedited administrative removal proceedings under section 238(b) of the Immigration and Nationality Act (INA). See 8 U.S.C.A. § 1228(b) (West 1999). Lewis was served with a notice of intent to issue a final administrative removal order, which informed him that he was deportable under section 237(a)(2)(A)(iii) of the INA, see

2

8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 1999), as an alien convicted of an aggravated felony. The notice also informed Lewis that he was required within 10 days to rebut the charges or request an opportunity to review the Service's evidence.[1] According to Lewis, he requested that he be permitted to review his administrative file, but the Service did not provide it to him. It is not clear from the administrative record that Lewis ever made such a request. It does appear, however, that Lewis submitted documents in rebuttal.

On January 4, 1999, the Service issued a one-paragraph final administrative order of removal, which directed that Lewis be removed from the United States based on the allegations contained in the notice and the evidence contained in the administrative record. The final order of removal rested on three factual determinations: (1) that Lewis was not a citizen of the United States, (2) that Lewis was not lawfully admitted to the United States for permanent residence, and (3) that Lewis had a conviction qualifying as an aggravated felony under section 101(a)(43)(B) of the INA. See 8 U.S.C.A. § 1101(a)(43)(B) (West 1999).[2]

Subsequently, Lewis filed this petition for review. He concedes that he is an alien and that his conviction under Maryland law qualifies as an "aggravated felony" within the meaning of the INA. He contends, however, that he is not deportable as a matter of law because Congress intended only to deport aliens whose date of conviction for an aggravated felony was on or after the effective date of the legislation which first made an aggravated felony a deportable offense -- November 18, 1988.[3]

_____

[1] The notice also explained that he could request an extension of time or admit deportability.

[2] The definition of "aggravated felony" under the INA includes "illicit trafficking in a controlled substance," 8 U.S.C.A. § 1101(a)(43)(B), or "an attempt or conspiracy to commit [such] an offense," 8 U.S.C.A. § 1101(a)(43)(U).

[3] Lewis's petition was styled as a "petition for judicial review and/or in lieu thereof a petition for writ of habeas corpus." Through this petition, Lewis originally raised a number of constitutional claims and sought habeas relief under 28 U.S.C.A. § 2241 (West 1994). At oral argument, however, Lewis abandoned his petition to the extent it sought habeas relief. He indicated, therefore, that we should consider his petition solely as one for direct review.

II.

Before we can reach the heart of this appeal, we must determine whether we have jurisdiction to consider Lewis's argument. Under section 237(a)(2)(A)(iii) of the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." See 8 U.S.C.A. § 1227(a)(2)(A)(iii). In its final administrative order, the Service determined that Lewis was an alien and was deportable based on his conviction of an aggravated felony. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546, substantially restricted our ability to review precisely this kind of removal order:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C.A. § 1252(a)(2)(C) (West 1999). Thus, under this section there is plainly no appellate recourse from a final order of removal for an alien who is removable because he has committed an offense encompassed by section 1227(a)(2)(A)(iii), that is, because he has committed an aggravated felony.

The language of this provision is expansive; indeed, similar language used in IIRIRA's transitional rules has been interpreted to prohibit altogether the filing of an appeal by an alien. See Berehe v. INS, 114 F.3d 159, 161 (10th Cir. 1997). Such an interpretation, however, raises various difficulties, among them the disquieting possibility that, under the auspices of this section, the Attorney General could summarily remove a law-abiding alien with no criminal record, and we would be powerless to directly review the removal. We do not believe that Congress intended such a result.

4

In fact, we recently rejected such a narrow reading of our role in reviewing final orders of removal under IIRIRA's transitional rules.**4** In Hall v. INS, 167 F.3d 852 (4th Cir. 1999), this court examined the parameters of our jurisdiction under an identical provision contained in the transitional rules. We concluded that the jurisdictional limitation under the transitional rules was triggered by two jurisdictional facts -- whether the deportee was an alien and whether he had been convicted of an offense enumerated in the statute-- and that we had jurisdiction to determine whether such facts, on which our jurisdiction to review a final order ultimately turns, were present. See id. at 855.

The same conclusion, of course, follows from an examination of IIRIRA's permanent jurisdiction-limiting provision, which is triggered by the same two jurisdictional facts: (1) whether the petitioner is an alien, and (2) whether he is "removable by reason of having committed a criminal offense" listed in section 1252(a)(2)(C). Because our jurisdiction turns on the presence, or lack thereof, of these two facts, we have jurisdiction to review them. As we observed in Hall:

> IIRIRA does not declare that the agency's determinations of alienage and deportability are final and unreviewable. It merely says there will be no appeal in certain classes of cases. To determine whether we have jurisdiction over this case, then, we must examine whether it falls within one of those classes. This requires that we examine the afore mentioned jurisdictional facts.

_____

**4** The transitional rules apply to aliens who were involved in deportation proceedings prior to April 1, 1997, and were issued a final deportation order more than thirty days after September 30, 1996, the date IIRIRA was enacted. See IIRIRA § 309(c). Like IIRIRA's permanent provision, the transitional rules bar judicial review of final removal orders for aliens who had committed certain aggravated felonies: "There shall be no appeal permitted in the case of an alien who is inadmissable or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of[September 30, 1996])." IIRIRA § 309(c)(4)(G).

Hall, 167 F.3d at 855 (citations omitted).

Lewis admits that he is an alien; he likewise agrees that his offense is an "aggravated felony" as defined by INA§ 237(a)(2)(A)(iii). See 8 U.S.C.A. § 1227(a)(2)(A)(iii). Nevertheless, Lewis insists that these concessions do not settle the matter. Although he concedes that his crime satisfies the definition of "aggravated felony," his contention, as we understand it, is that an aggravated felony conviction cannot serve as a basis for removal if it was committed prior to November 18, 1988, the date on which aggravated felonies were added to the INA as a ground for deportation. See Pub. L. No. 100-690, § 7344(a), 102 Stat. 4181 (1988).[5] According to Lewis, because he was convicted of the underlying offense in 1984, he is not"removable by reason of having committed" one of the criminal offenses enumerated in INA § 242(a)(2)(C). See 8 U.S.C.A.§ 1252(a)(2)(C).

We believe that Hall permits us to address this question even though we are limited to reviewing only whether Lewis "is an alien, and whether he has been convicted of one of the enumerated offenses." Hall, 167 F.3d at 855. We cannot go behind the offense as it was charged to reach our own determination as to whether the underlying facts amount to one of the enumerated crimes. See id. But, Lewis is not asking us to do this. He argues that, because of the date

_____

[5] Lewis's argument distinguishes between the statutory provision that defines "aggravated felony" for purposes of the INA, see 8 U.S.C.A. § 1101(a)(43), and the various provisions that attach immigration consequences to an alien who has been convicted of an aggravated felony, see, e.g., 8 U.S.C.A. § 1227(a)(2)(A)(iii) (aggravated felony is deportable offense); 8 U.S.C.A. § 1326(b)(2) (criminal penalties for reentry following removal subsequent to an aggravated felony conviction). The effective dates that impact the definitional provision are separate from those accompanying the provisions for immigration consequences. See De Osorio v. INS, 10 F.3d 1034, 1039-41 (4th Cir. 1993) (examining the temporal limitations on the definition of aggravated felony). Because of this distinction, Lewis concedes that his 1984 conviction falls within the definition of "aggravated felony" (even though drug trafficking crimes were added to the list of aggravated felonies in 1990), but denies that he can be deported because of it. Thus, Lewis's argument is focused singularly on whether deportation as an immigration consequence is subject to temporal limits.

6

of his conviction, he is not removable by reason of his offense. Lewis's substantive argument can be reduced purely to a question of statutory interpretation: Does INA section 237(a)(2)(A)(iii), 8 U.S.C.A. § 1227(a)(2)(A)(iii), which makes an alien deportable if he has been convicted of an aggravated felony "at any time after admission," apply to convictions prior to November 18, 1988? If not, then Lewis's offense is not one for which he could be removed, and, consequently, would not fall within the class of cases from which there can be no appeal under INA § 242(a)(2)(C). See 8 U.S.C.A. § 1252(a)(2)(C). As Hall points out, we have jurisdiction to review whether this case "falls within one of those classes," 167 F.3d at 855, and so it is appropriate for us to consider Lewis's argument.

III.

A.

In 1988, Congress amended section 241(a)(4) of the INA through the Anti-Drug Abuse Act of 1988 (ADAA), Pub.L. No. 100-690, 102 Stat. 4181 (1988), subjecting an alien to deportation for "convict[ion] of an aggravated felony at any time after entry." See ADAA § 7344(a).[6] Under section 7344(b) of the ADAA, however, Congress made this immigration consequence expressly applicable only to aliens "who ha[ve] been convicted, on or after the date of the enactment of this Act, of an aggravated felony." ADAA § 7344(b) (emphasis added). Thus, the ADAA added aggravated felonies to the list of deportable offenses under the INA, but only for convictions occurring on or after November 18, 1988. See ADAA § 7344(b). The parties agree on this much.

Based on ADAA § 7344(b), Lewis asserts that he is not subject to deportation as a consequence of his conviction -- even though it satisfies INA § 237(a)(2)(A)(iii), formerly INA§ 241, as a purely definitional matter -- because it occurred in 1984. Necessarily, then, Lewis argues that none of the INA's subsequent amendments altered the ADAA's expressly prospective application of deportation as a conse-

_____

[6] Former section 241 of the INA, previously codified in 8 U.S.C.A. § 1251, was renumbered and now appears in INA§ 237, 8 U.S.C.A. § 1227. See IIRIRA § 305(a)(2).

7

quence of an aggravated felony conviction. Lewis stakes his position to the decision of the Eleventh Circuit Court of Appeals in Lettman v. Reno, 168 F.3d 463 (11th Cir. 1999), vacated in part and reh'g granted, ___ F.3d ___, No. 98-5767, 1999 WL 652319 (11th Cir. Aug. 25, 1999), and urges us to adopt its conclusion that an aggravated felony (based on a third-degree murder) occurring prior to the enactment of the ADAA is not a deportable offense, see id. at 465-68.

In response, the Service contends that in 1990 Congress removed the temporal restriction set forth in section 7344(b) of the ADAA when it passed the Immigration Act of 1990 (IMMACT), Pub. L. No. 101-649, 104 Stat. 4978 (1990). The Service interprets section 602 of IMMACT to have completely supplanted the prior statutory scheme detailing the grounds for deportation along with the former effective date. In support of its position, the Service relies on the Board of Immigration Appeals' interpretation of IMMACT § 602 in Matter of Lettman, Int. Dec. 3370 (B.I.A. 1998).

B.

In order to determine the effect of IMMACT's amendments to INA § 241, we must first determine, as always, if congressional intent with respect to this precise issue is clear from the text of the statute. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). If we conclude "that Congress has not directly addressed the question at issue in a statute or its intent is ambiguous," see De Osorio v. INS, 10 F.3d 1034, 1038 (4th Cir. 1993), we must defer to the Board's interpretation of the statute provided it is not an unreasonable one, see id.

Section 602 of IMMACT, entitled "Revision of Grounds for Deportation," substantially revised former INA§ 241, which had listed separately each of the grounds for deporting an alien. Under IMMACT, Congress restructured the statutory scheme so that similar deportable offenses would be grouped together. See, e.g., IMMACT § 602(a)(2)(A) (general crimes including aggravated felonies); § 602(a)(2)(B) (controlled substances); § 602(a)(2)(C) (firearm offenses).[7] Section 602(a) purported to replace in its entirety the prior section of the INA cataloguing the various grounds for deportation.

_____

[7] After the enactment of the ADAA, the aggravated felony ground for deportation was set forth in section 241(a)(4)(B) of the INA; IMMACT

8

Most significantly for our purposes, section 602(c) of IMMACT provided as follows:

> (c) SAVINGS PROVISION.--Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraph (15), (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act, shall be considered to remain so deportable. Except as otherwise specifically provided in such section and subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.

> (d) EFFECTIVE DATE.--The amendments made by this section . . . shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991.

Viewed in isolation, the second sentence of section 602(c) appears to eliminate any doubt that an alien convicted of an aggravated felony, regardless of the date of conviction, is deportable. Indeed, since IMMACT § 602 amended the grounds for deportation under former INA § 241, the phrase "such section, <u>as amended by this section</u>" clearly refers to the deportation grounds as set forth in IMMACT § 602. Because IMMACT § 602 comprehensively reworked the entire section on grounds for deportation, it included aggravated felonies in the amendment and, in turn, made them deportable offenses regard-

_____

reorganized the INA so that the aggravated felony deportation ground appeared in section 241(a)(2)(A)(iii). The substance, however, remained the same. Indeed, the current provision listing an aggravated felony as a ground for deportation is identical to the previous versions of the INA. <u>See</u> 8 U.S.C.A. § 1227(a)(2)(A)(iii).

9

less of whether the underlying facts "occurred before the date of the enactment of this Act." IMMACT § 602(c).

However, the meaning of section 602(c) becomes less certain in light of the first sentence, which refers to and"saves" various portions of INA § 241 as it existed prior to IMMACT. An argument could be fashioned that the use of the phrase "such section" immediately following the foregoing references was meant to keep the prior effective dates intact.

After thoroughly considering the interplay between these two sentences, we cannot conclude that congressional intent is clear and unequivocal here. The Service argues that the Board correctly interpreted this provision in Matter of Lettman, Int. Dec. 3370. Acknowledging the ambiguity of the second sentence of section 602(c), the Board reasoned as follows:

> A number of factors . . . point to the construction of the phrase "such section" that we adopt, namely, that "such section" refers to section 241 [of the INA]. .. .
>
> We read the provision in question as mandating that, except as otherwise provided in section 241, as amended in 1990, an alien is deportable for an enumerated ground despite the date of entry or the date of the underlying facts which establish deportability. . . .
>
> Our reading comports with our understanding that the purpose of section 602 of the 1990 Act was to completely revise the deportation grounds. With this in mind, we find it difficult to believe that Congress intended to revise the deportation grounds, but still have the former Act ultimately determine deportability. In other words, it makes no sense to enact a whole new provision, yet keep the former version perpetually intact.

Matter of Lettman, Int. Dec. 3370. Hence, the Board rejected the idea that the phrase "such section" in the second sentence of section 602(c) referred to section 241 of the INA as it existed under the ADAA, i.e.,

10

that it preserved the prospective application of deportation conse-
quences to aggravated felonies occurring on or after November 18,
1988. Such a reading, the Board concluded, ran contrary to common
sense in view of the comprehensive nature of IMMACT§ 602(a):

> The result of this would be to have a completely revised set
> of deportation grounds, as set out in section 602(a), but to
> nonetheless allow the prior version of the deportation
> grounds at section 241 to remain intact, and to set limita-
> tions for the deportability of aliens. This reading does not
> make sense in light of Congress' wholesale revision of sec-
> tion 241(a) of the Act in 1990. Indeed, there would be no
> point in enacting a new statutory scheme if the intent was
> to keep the former version of the law in control whenever
> there was a difference between the old and the new. We can-
> not conclude that this was the intention of Congress.

Id.

Moreover, The Board harmonized the two sentences contained in
section 602(c), concluding that they performed different functions:

> Our reading of the second sentence of section 602(c) as a
> separate sentence, and not as a traditional savings clause, is
> buttressed by examination of former section 241(d) of the
> Act (1988). . . . The language of former section 241(d) par-
> allels the second sentence of section 602(c) and is identical
> in most respects. The subsequent repeal of section 241(d)
> . . . confirms for us that the second sentence of section
> 602(c) is not intended to serve as a savings clause, but rather
> was intended to serve the same function as former section
> 241(d).

Id.

We think the Board's interpretation is certainly reasonable --
indeed, we would likely reach the same conclusion. Further, we are
comforted by the fact that, as the Board pointed out in Matter of
Lettman, its interpretation is consistent with the reasoning of federal

11

appellate decisions concluding that section 602 of IMMACT could be reasonably interpreted to have "completely supersede[d] all former versions of legislation dealing with deportation for firearm offenses," rendering pre-ADAA firearm offenses deportable despite the fact that, as here, the ADAA made firearm convictions deportable only if they occurred on or after the date of enactment. Chow v. INS, 12 F.3d 34, 37 (5th Cir. 1993); see also Hamama v. INS, 78 F.3d 233, 236 (6th Cir. 1996); Lopez-Amaro v. INS, 25 F.3d 986, 988 (11th Cir. 1994), cert. denied, 513 U.S. 1146 (1995).

Accordingly, we find the Board's interpretation of this section to be reasonable, and we defer to it. See Chevron , 467 U.S. at 844.

C.

Lewis disputes that the Board's Matter of Lettman decision is reasonable, primarily because of his belief that the Eleventh Circuit Court of Appeals reversed Matter of Lettman in Lettman v. Reno, 168 F.3d 463 (11th Cir. 1999). In our view, Lettman  does not cast doubt on the reasonableness of the Board's interpretation. A careful comparison of these decisions reveals that the Eleventh Circuit did not technically reverse the Board's decision in Matter of Lettman, Int. Dec. 3370. Lettman, who was convicted of an aggravated felony in 1987, was arrested in 1996 and subsequently ordered deported by an immigration judge; the Board affirmed in an order issued in July 1997. See Lettman, 168 F.3d at 464; Matter of Lettman , Int. Dec. 3370. Lettman then moved the Board to reconsider its decision; he also petitioned the Eleventh Circuit Court of Appeals for review of the Board's July 1997 decision. Apparently, while his petition for review was pending in the Eleventh Circuit, the Board granted Lettman's motion to reconsider and, in November 1998, issued its decision in Matter of Lettman, Int. Dec. 3370, again affirming the immigration judge's order of deportation, but on different reasoning. See id. In February, 1999, the Eleventh Circuit handed down its decision, reversing the Board's 1997 decision -- not the 1998 decision. See Lettman, 168 F.3d at 464.

Additionally, the issue directly confronted by the Eleventh Circuit in Lettman was whether section 321 of IIRIRA, which amended the definition of aggravated felony, eliminated the temporal restrictions

12

emplaced by section 7344(b) of the ADAA -- not whether section 602(c) of IMMACT did so. See id. at 466-68. Thus, the Eleventh Circuit's Lettman decision really addressed a different issue than the one addressed by the Board in Matter of Lettman and the one we are presented with here.**8**

In any event, the Eleventh Circuit recently granted the Service's petition for rehearing and vacated Lettman to the extent it held that an alien convicted of an aggravated felony prior to the effective date of the ADAA is not deportable. See Lettman v. Reno, ___ F.3d ___, No. 98-5767, 1999 WL 652319 (11th Cir. Aug. 25, 1999). Accordingly, we see no reason to reject the Board's interpretation as unreasonable based on the decision of the Eleventh Circuit Court of Appeals in Lettman, which Lewis adopts as his argument.

IV.

Lewis raises additional issues in his petition, none of which merit extended discussion.

He complains that, because he was not provided with a copy of the administrative record prior to the issuance of the final order of removal, he did not receive adequate process. Yet, Lewis admits all of the factual determinations set forth in the final order of removal: that he is an alien, that he has never been admitted as a lawful permanent resident, and that he pled guilty to and was convicted of the offense listed in the final order of removal. An opportunity to review the record prior to the issuance of the final order, therefore, would not have enabled him to challenge any of these factual determinations.

_____

**8** This conclusion is strengthened by the fact that in Lettman, the Eleventh Circuit distinguished Lopez-Amaro, a decision which we think supports the reasonableness of the Board's interpretation. The court distinguished Lopez-Amaro on the basis that the Lopez-Amaro court was considering IMMACT § 602, an amendment to a statutory provision fixing deportation as a consequence of an aggravated felony conviction. By contrast, the Lettman court considered whether an amendment to the definition of aggravated felony could eliminate the restriction against deportation for aggravated felonies prior to November 18, 1988. See Lettman, 168 F.3d at 467 n.4. Precisely the same distinction separates our case from the Eleventh Circuit's case in Lettman.

13

Lewis also contends that the final administrative order is not supported by clear and convincing evidence because "there is nothing to show this Court [Lewis] even committed a crime." Brief of Petitioner at 9. Once again, his argument is rendered utterly meritless in light of his admission that, in fact, he was convicted of the subject offense.

Lewis raises the additional claim that due process requires the courts to review the underlying evidence and to determine whether the offense at issue qualifies as an "aggravated felony." Because IIRIRA limits our jurisdiction in cases such as this one, Lewis contends that it is unconstitutional. We have previously rejected the argument that the Constitution requires us to look at the underlying facts. See Hall, 167 F.3d at 857. And, to the extent Lewis complains that IIRIRA unconstitutionally precludes this court from determining whether the offense as charged is an "aggravated felony," his argument is misguided since, as we explained at length in Hall, we are permitted to examine such jurisdictional facts. See id. at 855.

Lewis's remaining contentions are clearly without merit and we reject them.[9]

V.

We conclude that Lewis is an alien who is removable under section 237(a)(2)(A)(iii) of the INA for committing an aggravated felony. Accordingly, we are without jurisdiction and must therefore dismiss this petition. See 8 U.S.C.A. § 1252(a)(2)(C).

DISMISSED

_____

[9] Because Lewis first raised it in his reply brief, we refuse to consider his argument that IIRIRA has an impermissible retroactive effect. See Hunt v. Nuth, 57 F.3d 1327, 1337 (4th Cir. 1995).

14