UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1232

LEARIE A. DALY,

Petitioner,

versus

ALBERTO R. GONZALES, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals. (A-035-751-059)

Argued: February 3, 2005                    Decided: May 2, 2005

Before WILKINS, Chief Judge, DUNCAN, Circuit Judge, and James C. CACHERIS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Senior Judge Cacheris wrote the majority opinion, in which Chief Judge Wilkins joined. Judge Duncan wrote a dissenting opinion.

**ARGUED:** MaryRose Ozee Nwadike, Silver Spring, Maryland, for Petitioner. Hillel Ryder Smith, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

CACHERIS, Senior District Judge:

Learie Arlington Daly, a citizen of Trinidad, petitions for review of a final order of removal based on a 1996 conviction for common law battery in Maryland. We affirm.

I.

Daly entered the United States from Trinidad on or about December 18, 1976, as a lawful permanent resident at the age of five. While in high school, Daly joined the United States Marine Corps, and formally enlisted upon graduation from high school on July 11, 1989. On September 6, 1993, Daly was honorably discharged from active duty.

On September 30, 1996, Daly was arrested on charges that he had beaten his two daughters, ages four and two. On October 4, 1996, Daly was charged with two counts of common law battery and two counts of parental child abuse. On December 17, 1996, Daly pled guilty to two counts of common law battery in the United States District Court for the District of Maryland and the child abuse charges were dismissed. Daly was sentenced to six years of imprisonment, all of which were suspended, and three years of supervised probation.

On July 22, 1997, Daly was arrested and charged with child abuse, second degree assault and possession of a deadly weapon with intent to injure, and violating his probation. On October 27,

2

1998, Daly was convicted of violating the terms of his probation and his original six year sentence was imposed.

On May 14, 1999, the Immigration and Naturalization Service ("INS") charged Daly with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 18 U.S.C. § 1101 et seq., as an alien who has been convicted of an aggravated felony, to wit, a crime of violence as defined in section 101(a)(43)(F) of the INA. See 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii). An "aggravated felony" is defined to include "a crime of violence (as defined in 18 U.S.C. § 16) for which the term of imprisonment is at least one year." Id. A "crime of violence" is defined to include "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16.

Between 2001 and 2002, Daly appeared before an immigration judge, who rescheduled his case several times to allow him an opportunity to, inter alia, apply for naturalization.[1] On July 9, 2001, the INS denied Daly's application for naturalization, finding that his aggravated felony conviction precluded him from establishing good moral character.[2] On August 14, 2001, the INS

_____

[1]Pursuant to 8 U.S.C. § 1440(b)(1), an honorably discharged veteran of the United States armed forces may apply for naturalization during deportation proceedings against him.

[2]An applicant for naturalization must demonstrate, inter alia, that he is "a person of good moral character" for at least five years preceding the filing of his application. See 8 U.S.C.

denied Daly's request for a hearing regarding the denial. On February 21, 2002, the United States District Court for the District of Maryland dismissed Daly's petition for review of the denial of his application.

On June 25, 2002, Daly filed a motion to terminate his removal proceedings on the basis that he was a "national" of the United States. On August 1, 2002, the immigration judge denied Daly's motion and ordered him removed to Trinidad. On March 14, 2003, the Board of Immigration Appeals ("the Board") remanded the case for the immigration judge to determine whether Daly was removable as charged. On June 16, 2003, the immigration judge found Daly removable as an aggravated felon and ordered him removed. On February 13, 2004, the Board affirmed the immigration judge's decision. Daly has filed a petition seeking review of the Board's February 13, 2004 ruling.

II.

This Court reviews legal issues determined by the Board of Immigration Appeals de novo. Lopez-Soto v. Ashcroft, 383 F.3d 228, 234 (4th Cir. 2004)(citations omitted). The Court always has jurisdiction to determine whether the facts relevant to its

§ 1427(a). No person shall be regarded as, or found to be, a person of good moral character if he has been convicted of an aggravated felony during the period for which good moral character is required to be shown. 8 U.S.C. § 1101(f)(8).

4

jurisdiction exist.  <u>Wireko v. Reno</u>, 211 F.3d 833, 835 (4th Cir. 2000)(citations omitted).

## III.

Before reaching the merits of the appeal, we must determine whether we have jurisdiction to consider Daly's argument.  Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii)(2004).  Under section 1252(a)(2)(C) of the INA:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1127(a)(2)(A)(iii) . . . of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C)(2004).

However, the Court has rejected a narrow reading of its role in reviewing final orders of removal under this jurisdiction-limiting provision.  <u>See</u> <u>Lewis v. I.N.S.</u>, 194 F.3d 539, 542 (4th Cir. 1999).  Rather, we have jurisdiction to review the two facts which determine whether we have jurisdiction: (1) whether the petitioner is an alien, and (2) whether he is "removable by reason of having committed a criminal offense" listed in section 1252(a)(2)(C).  <u>Id</u>.

5

IV.

Daly contests both these facts and argues that: (1) he is not an alien because he is a United States national; and (2) his conviction of two misdemeanor common law battery offenses do not constitute a crime of violence as defined by section 101(a)(43)(F) of the INA and thus do not fit the definition of an aggravated felony. These are the two issues before us.

A.

Section 1101(a)(3) of the INA defines an "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3)(2004). A "national of the United States" is "a citizen of the United States, or a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22)(2004).

Daly claims that he is not an alien because he has acquired non-citizen "national" status through objective manifestations of allegiance. He claims to have manifested his allegiance by applying for citizenship, residing in the United States for twenty-six years, serving in the U.S. Marine Corps, and taking an oath upon enlisting with the Marine Corps. However, none of these alleged manifestations of allegiance are sufficient to change his status from alien to national of the United States.

6

1.

This Court has not addressed whether filing an application for naturalization establishes nationality in the immigration context to determine whether a non-United States citizen may enjoy the rights and benefits of United States nationality. The Court previously held in a different context that filing an application for naturalization does establish nationality.[3]

The Ninth Circuit, however, has addressed the issue in precisely the same context we have in this case, and held that an alien does not become a national of the United States for purposes of exercising nationality rights simply by completing an application for naturalization and giving a statement of allegiance. Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 972 (9th Cir. 2003). The court began its analysis by noting that traditionally, "national of the United States" encompassed only citizens of the United States and non-citizens born in territories of the United States. Id. at 968.

---

[3]In Morin v. United States, 80 F.3d 124, 126 (4th Cir. 1996), the defendant was charged with the murder of "a national of the United States" pursuant to 18 U.S.C. § 2332(a). The defendant tried to escape that offense by alleging that the victim was not a national of the United States. Id. The Court ruled that because the victim was a permanent resident alien of the United States who had applied for United States citizenship, he was indeed "a national of the United States." Id.
However, Morin concerned the reach of a federal murder statute and is not controlling where, as here, a person's nationality status determines whether he can enjoy the rights and benefits of United States nationality and avoid deportation.

The court then considered the text and context of section 1101(a)(22), which defines "national of the United States" as "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Id. The court stated that a "naturalization applicant cannot rightly be said to owe permanent allegiance, because naturalization applications are often denied or withdrawn." Id. (emphasis in original). Turning to statutory context, the court noted that section 1101(a)(23) provides that "[t]he term 'naturalization' means the conferring of nationality of a state upon a person after birth, by any means whatsoever." Id. This provision which immediately follows the definition of a "national of the United States" provides that "naturalization" is the path by which a person attains nationality after birth. Section 1101(a)(23) is thus consistent with the conclusion that one may become a "national of the United States" only through birth or by completing the naturalization process. Id.

The court found further support for its interpretation of "national of the United States" in 8 U.S.C. § 1408, which lists four categories of persons who are classified as nationals, but not citizens, of the United States. Id. Each category relates in some way to birth in an outlying possession of the United States. Applying the canon of expressio unius est exclusio alterius, the court concluded that the fact that Congress has defined "national"

8

as including only those four categories of persons is significant. *Id.* at 969-70 (citing <u>Boudette v. Barnette</u>, 923 F.2d 754, 756-57 (9th Cir. 1991)); <u>see also</u> <u>United States v. Giordano</u>, 469 F.2d 522, 529 (4th Cir. 1972).

Section 1481 of Title 8, which sets forth a number of ways in which a "person who is a national of the United States whether by birth or naturalization, shall lose his nationality," also provided support. 8 U.S.C. § 1481(a). This section implies that a person can become a "national of the United States" only through either birth or nationalization. <u>Perdomo-Padilla</u>, 333 F.3d at 970.

The court also noted that the Petitioner's interpretation of section 1101(a)(22) could not be reconciled with 8 U.S.C. § 1429, which provides that "no person shall be naturalized against whom there is outstanding a final finding of deportability . . . and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding." 8 U.S.C. § 1429. Because the INA permits the removal of aliens only, and section 1429 allows the removal of individuals with pending naturalizations, the court concluded that it was clear that Congress viewed applicants for naturalization as aliens and not nationals. <u>Id.</u> at 970.

Finally, the court turned to the regulatory context of section 1101(a)(22) and noted that although the INS has not issued regulations defining "national" under section 1101(a)(22), at least

one regulation addresses the meaning of "national of the United States" in a different context. Id. Title 14 C.F.R. § 1259.101(c) defines "national of the United States" for purposes of a NASA grant program as "a citizen of the United States or a native resident of a possession of the United States." It does not refer to or include a citizen of another country who has applied for United States naturalization.

The court then declined to apply Morin in the immigration context and ultimately concluded that the only way to become a "national of the United States" was through birth or naturalization. Id. at 972.

Other courts of appeals have adopted the Ninth Circuit's holding. See Salim v. Ashcroft, 350 F.3d 307, 310 (3d Cir. 2003)("we now join the Court of Appeals for the Ninth Circuit in holding that simply filing an application for naturalization does not prove that one 'owes a permanent allegiance to the United States'"); United States v. Jimenez-Alcala, 353 F.3d 858, 861 (10th Cir. 2003)(adopting the Ninth's Circuit's analysis and conclusion that "the term 'national,' when used to describe non-citizens, refers only to those born in territories of the United States").

We also find the Ninth Circuit's analysis persuasive and conclude that in the immigration context, an alien does not become a national of the United States simply by completing an application for naturalization and giving a statement of allegiance. In the

10

words of the Ninth Circuit, the "Petitioner's interpretation creates an absurd result with respect to those persons whose applications for naturalization are, in fact, denied." Perdomo-Padilla, 333 F.3d at 969. Daly did not attain the status of national of the United States by applying for naturalization.

2.

We also reject Daly's claim that he is a national by virtue of residing for twenty-six years in the United States. The Court joins the other courts of appeals that have held that a person who merely resides for a long period in the United States does not become a national of the United States. See Oliver v. I.N.S., 517 F.2d 426, 427-28 (2d Cir. 1975)(petitioner who resided exclusively in the United States for twenty years since early childhood does not "owe allegiance" and is not a "national"); Hughes v. Ashcroft, 255 F.3d 752, 756 (9th Cir. 2001); Carreon-Hernandez v. Levi, 543 F.2d 637, 638 (8th Cir. 1976); accord Shekoyan v. Sibley Intern. Corp., 217 F. Supp. 2d 59, 66-67 (D.D.C. 2002). A long residency period does not demonstrate the requisite permanent allegiance to the United States. Daly did not become a national of the United States by residing in the United States for twenty-six years.

11

3.

Daly's claim that he is a United States national because he served in the United States Marine Corps and took the oath upon enlisting also lacks merit. The Ninth Circuit recently held that an alien who has served in the United States armed forces and taken the military oath has not become a national of the United States. Reyes-Alcaraz v. Ashcroft, 363 F.3d 937, 938 (9th Cir. 2004). The court explained that its ruling in Perdomo-Padilla that birth and full naturalization are the only two ways to attain the status of "national" precluded the petitioner's argument. Id. at 940. (emphasis in original). However, the court explained that even if it were free to decide that the petitioner could achieve national status by some act other than full naturalization, it would still conclude that the military oath does not demonstrate that the person taking the oath "owes permanent allegiance to the United States" as required by 8 U.S.C. § 1101(a)(22). Id.

We find the Ninth Circuit's analysis in Reyes-Alcaraz persuasive and hereby adopt that analysis. Daly did not become a national of the United States by serving in the Marine Corps and taking the oath upon enlisting.

For the foregoing reasons, the Court finds that Daly is an "alien" as defined by the INA.

12

B.

Daly argues that he is not removable because he has not been convicted of a crime of violence and therefore did not commit an aggravated felony. This argument lacks merit.

Daly argues that the Board erred in looking to the Application for Statement of Charges/Statement of Probable Cause when determining whether battery was a crime of violence. Daly was convicted of common law battery, a crime that is not necessarily a crime of violence. Under Maryland law, a battery is defined as the "unlawful beating of another," and includes "any unlawful force used against a person of another, no matter how slight," State v. Duckett, 510 A.2d 253 (Md. 1986)(emphasis in original). Some courts call crimes like common law battery that sometimes are, and sometimes are not, crimes of violence, divisible crimes. See, e.g., Dickson v. Ashcroft, 346 F.3d 44, 48 (2d Cir. 2003).

Daly relies on a single sentence in Lewis v. I.N.S. to support his position: "We cannot go behind the offense as it was charged to reach our own determination as to whether the underlying facts amount to one of the enumerated crimes" [and thus whether petitioner is removable under INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C)]. 194 F.3d at 543 (citing Hall v. I.N.S., 167 F.3d 852, 855 (4th Cir. 1999)). However, Daly's reliance on Lewis is misplaced. In Lewis, the petitioner admitted that he had committed an aggravated felony, and the only question before the Court was

13

whether he committed it at a time when it could be a basis for his removal. 194 F.3d at 542-43. Accordingly, the Court could determine this issue by looking solely at INA section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).

Daly acknowledges that the Board may review the record of conviction where there is a divisible offense. (See Pet'r Br. at 27). However, he argues that under section 240(c)(3)(B) of the INA, 8 U.S.C. § 1229a(c)(3)(B), the record of conviction does not include Maryland's Application for Statement of Charges, which he likens to a police report. (Id.) Yet precedent from this and other courts of appeals indicate that the Application for Statement of Charges is part of the charging document, and thus part of the record of conviction which the Board may consider.

Based on the Court's opinion in United States v. Kirksey, 138 F.3d 120 (4th Cir. 1998), the Board decided that it could look to the Application for Statement of Charges to determine whether the common law battery was a crime of violence in Daly's case. The issues in Kirksey were: (1) whether assault and battery convictions constitute crimes of violence for purposes of the Sentencing Guidelines; and (2) if they are not crimes of violence, what portions of the state record can be consulted to determine whether they are. Id. at 122.

In Kirksey, the Court noted that normally a categorical approach is used to determine whether a conviction constitutes a

14

crime of violence. Id. at 124. A categorical approach relies only on (1) the fact of conviction and (2) the definition of the prior offense. Id. (citations omitted). However:

> where the definition of the prior crime of conviction is ambiguous and will not necessarily provide an answer to whether the prior conviction was a crime of violence, we look beyond the definition of the crime to examine the facts contained in the charging document on which the defendant was convicted.

Id.

Given the definition of battery, it was unclear whether the Court could say categorically that the conduct encompassed in the crime of battery constitutes the use of physical force against the person of another to the degree required to constitute a crime of violence. Id. at 125. The Court then explained that the facts contained in the Application for Statement of Charges/Statement of Probable Cause were incorporated into the charging document, and thus could be consulted to determine whether the conduct constituted a crime of violence. Id. at 125-26. Under Maryland law, because a statement of charges is a charging document, it must contain "a concise and definite statement of the essential facts of the offense with which the defendant is charged." Id. at 126 (citing Md. Rule 4-202).[4] Two of the charging documents involved in Kirksey's prior convictions began with the clause: "Upon the

---

[4]Maryland Rule 4-202 provides: "A charging document shall contain . . . a concise and definite statement of the essential facts of the offense with which the defendant is charged . . . ."

15

facts contained in the application of [complaining witness], it is formally charged . . . ."  Kirksey, 138 F.3d at 126.

The Court explained:

> By incorporating the facts of the complaining witnesses' statements, the charging documents thus comply with Maryland Rule 4-202.  Moreover, the facts so incorporated are filed with the charging document, as required by Maryland Rule 4-211.  Accordingly, under Maryland procedure, the affidavits of complaining witnesses in these circumstances were not mere testimony providing underlying facts for the issuance of a charging document; they served to supply the facts of the charges as required by Maryland Rule 4-202.

Id.

The Court has also held that where it is unclear from the definition of the crime whether the crime was committed by violent means so as to constitute a violent felony under 18 U.S.C. 924(e)(2)(B)(ii), the sentencing court must examine the charging papers and the jury instructions.  United States v. Cook, 26 F.3d 507, 509 (4th Cir. 1994).  Moreover, other courts of appeals have held that a judge may look beyond the definition of the crime to determine whether an alien committed a crime of violence.

The Second Circuit has held that "[i]n reviewing a conviction under a divisible statute, the categorical approach permits reference to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal."  Dickson, 346 F.3d at 48-49. The court went on to explain that "'the record of conviction' is statutorily defined as including . . . the charging document . . .

16

." <u>Id.</u> at 53 (citing INA section 240(c)(3)(B), 8 U.S.C. § 1229a(c)(3)(B)).

The Ninth Circuit has explained that "[i]f the statute of conviction is not a categorical match because it criminalizes both conduct that does and conduct that does not qualify as an aggravated felony," the court takes a "modified categorical approach," and conducts "a limited examination of documents in the 'record of conviction.'" <u>Ferreira v. Ashcroft</u>, 390 F.3d 1091, 1095 (9th Cir. 2004). The record of conviction includes the state charging document. <u>Id.</u>

Finally, the Seventh Circuit has noted that "a well established exception allows judges to look beyond the indictment or information when it [i]s otherwise impossible to determine the proper classification of the offense . . . and . . . the deviation d[oes] not require a hearing to resolve contested factual issues." <u>Xiong v. I.N.S.</u>, 173 F.3d 601, 605-06 (7th Cir. 1999)(allowing judge to look at the criminal complaint not for the illegitimate purpose of determining what petitioner could or should have been convicted of, but rather for the legitimate purpose of determining what he had been convicted of).

The Court's reasoning in <u>Kirksey</u> applies in this case. Like two of the charging documents involved in Kirksey's prior convictions, the charging document in Daly's prior conviction states: "Upon the facts contained in the application of

17

[complaining witness], it is formally charged . . . ." J.A. 6. The complaining witness was the police officer who responded to a call from Daly's children's school about physical child abuse. A.R. 821. He filled out the Application for Statement of Charges and signed it under penalties of perjury that the contents of the Application were true to the best of his knowledge, information and belief. Id. Based on Kirksey, the facts contained in the Application for Statement of Charges/Statement of Probable Cause were incorporated into the charging document, and could be consulted to determine whether the conduct constituted a crime of violence.

The Application reveals that Daly physically struck his four-year-old daughter with a belt and buckle resulting in serious facial injury and physically beat his two-year-old daughter so severely that the beating resulted in bruising and marks on her buttocks and thighs. A.R. 821-23; J.A. 240. A "crime of violence" is defined to include "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16. The facts contained in the Application clearly show that Daly's underlying conviction was for a crime of violence. We find that the Board did not err in referencing the Application for Statement of Charges/Statement of Probable Cause, and Daly is removable by reason of having committed a crime of violence.

18

V.

For the reasons set forth above, we affirm the ruling of the Board of Immigration Appeals.

AFFIRMED

DUNCAN, Circuit Judge, dissenting:

This court has previously held that an application for citizenship suffices to make a permanent resident alien a national of the United States pursuant to 8 U.S.C. § 1101(a)(22). United States v. Morin, 80 F.3d 124, 126-27 (4th Cir. 1996). The majority, in holding that Mr. Daly's application for citizenship does not make him a national of the United States pursuant to Section 1101(a)(2), claims that Morin occurred in a different context and proceeds to reinterpret the statute. See Maj. Op. n.3. I do not agree that the existence of "different contexts" gives us license to interpret the exact language in the same statute differently in different cases.

As the Supreme Court has noted:

It would be an extraordinary principle of construction that would authorize or permit a court to give the same statute wholly different meanings in different cases, and it would require a stronger showing of congressional intent than has been made in this case to justify the assumption of such unconfined power.

United States v. Louisiana (Louisiana Boundary Case), 394 U.S. 11, 34 (1969); see also Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 972 (9th Cir. 2003) (refusing to distinguish Morin from the immigration context simply because it was a criminal case); Department of Energy v. Westland, 565 F.2d 685, 690 n.6 (C.C.P.A. 1977); Kehaya v. United States, 355 F.2d 639, 641 (Ct. Cl. 1966).

While I agree with the majority that Perdomo-Padilla presents the better reading of Section 1101(a)(2), I am compelled to follow

20

<u>Morin</u> until it is overruled by statutory amendment, the Supreme Court, or the Fourth Circuit sitting en banc.  <u>See</u> <u>McMellon v. United States</u>, 387 F.3d 329, 332-33 (4th Cir. 2004) (en banc). Under <u>Morin</u>, Mr. Daly is a United States national not subject to deportation.  Accordingly, I would reverse the final order of removal.  I respectfully dissent.