MATTER OF V——

In DEPORTATION Proceedings

A-8583853

*Decided by Board June 1, 1959*

Deportability—Section 241(a)(4) of 1952 act—Commitment under Federal Youth Corrections Act not "sentence to confinement."

Commitment for an indefinite term for treatment and supervision under the Federal Youth Corrections Act of September 30, 1950, as amended (18 U.S.C., chapter 402, sections 5005–5026), is not a "sentence to confinement" within the meaning of section 241(a)(4) of the 1952 act. (Cf. *Matter of L——R——*, A-6881251, Int. Dec. No. 985; *Matter of P——*, A-8378327, Int. Dec. No. 1043.)

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Crime within five years—Embezzlement.

BEFORE THE BOARD

Discussion: This case is before us on appeal from a decision of a special inquiry officer directing the respondent's deportation.

The respondent is a 21-year-old unmarried male whose date of birth appears to be January 23, 1938. He is a native of Czechoslovakia and is either a citizen of that country or of Israel. He last entered the United States on December 9, 1953. Apparently he was lawfully admitted for permanent residence at that time and had not previously resided in this country. On June 2, 1958, the respondent was convicted of having embezzled funds on April 15, 1958, from a Federal savings and loan association in violation of 18 U.S.C. 657, and the court committed him to the custody of the Attorney General for an indefinite term for treatment and supervision pursuant to the Federal Youth Corrections Act (18 U.S.C. 5010(b)) until discharged as provided by 18 U.S.C. 5017(c). The latter provision requires that such a person shall be released conditionally under supervision on or before the expiration of four years from the date of conviction and shall be discharged unconditionally on or before six years from the date of conviction. The issue to be determined is whether the respondent is deportable under 8 U.S.C. 1251(a)(4).

360

Counsel contends that there were certain extenuating circumstances in connection with the commission of the offense. He stated that the respondent came to the United States with his parents, that his brother and his sister in 1953; that during the period when he was attending high school in this country he fell in love with another student; that she returned to Puerto Rico; and that he followed her there in December 1957. Up to that time, he had lived with his parents in New York City. In April 1958 he was employed as a teller at a Federal savings and loan association in Miami Beach, Florida, and reported a shortage in his cash account of $420. Subsequently, he admitted that he had taken the money and he returned $410 of the sum. When he was arrested, he was ashamed to tell his parents in New York City and was represented by a court-appointed attorney. Apparently the respondent has not been arrested on any other occasion. During the oral argument, counsel stated that the respondent's father was naturalized as a United States citizen on March 9, 1959. None of this information appears in the record itself, and we must determine the issue of deportability on the basis of the statutory provisions and without regard to whether there were mitigating circumstances. For the reasons hereinafter stated, we conclude that the respondent is not deportable and other contentions of counsel need not be discussed.

8 U.S.C. 1251(a)(4) requires the deportation of any alien who "is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more * * *." The respondent was committed under the Federal Youth Corrections Act of September 30, 1950, as amended (18 U.S.C., chapter 402, sections 5005–5026). The question here is whether this respondent's commitment is within the purview of the language of 8 U.S.C. 1251(a)(4).

The word "convicted" in 8 U.S.C. 1251(a)(4) has been construed to require finality of conviction (*Matter of* L——R——, 7 I. & N. Dec. 318 (Atty. Gen., 1957); *Matter of* O——, 7 I. & N. Dec. 539 (1957)). In the first case, the Attorney General ruled that the "conviction" did not satisfy the requirement of the deportation statute because the sentence had been entered under a provision of the law of Texas that "neither the verdict of conviction nor the judgment entered thereon shall become final," except upon final conviction for another felony. There is also a statutory provision in California which permits a defendant, after completion of probation, to withdraw a plea of guilty or have a verdict of guilty set aside, after which the court is required to dismiss the accusations or information against the defendant. Thereafter, the expunged conviction is not a basis for deportation (*Matter of* O——T——, 4 I. & N. Dec. 265 (1951)).

361

The Federal Youth Corrections Act contains the following provisions (18 U.S.C. 5021) : "Upon the unconditional discharge by the Division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Division shall issue to the youth offender a certificate to that effect." Hence, if the respondent is granted an unconditional discharge before the expiration of the maximum sentence, his conviction will be automatically set aside. Under these circumstances, there is considerable doubt whether his conviction may properly be regarded as a conviction with the degree of finality justifying deportation under 8 U.S.C. 1251(a)(4).

Although some question may exist as to the finality of the respondent's conviction, we do not base our decision on that ground but rather on the basic similarities between the Federal Youth Corrections Act and the Federal statutory provisions pertaining to juvenile delinquency. It is well settled that one who has been confined as a juvenile delinquent is not subject to deportation or exclusion because of the offense which was committed (*Matter of F——*, 2 I. & N. Dec. 517, 518 (1946)). However, in a decision of the Central Office of the Service in 1950, it was held that a commitment to the California Youth Authority was a sentence to imprisonment (*Matter of C——R——*, 4 I. & N. Dec. 136). During the oral argument, *Matter of L——R——*, A-6881251, Int. Dec. No. 985 (Feb. 20, 1959), was cited on behalf of the Service. There we held that an alien committed to the California Youth Authority was deportable under 8 U.S.C. 1251(a)(11) as one convicted of a narcotic violation. That case is not entirely pertinent because 8 U.S.C. 1251(a)(11) requires only a conviction, whereas the statutory provision involved in this respondent's case requires both conviction and a sentence to confinement for one year or more.

On the other hand, it has been held that minors who were not tried as juvenile delinquents but who were convicted of crimes and committed to the New York House of Refuge and the New York State Vocational Institution had not been sentenced to imprisonment within the meaning of the 1917 act nor convicted of a crime involving moral turpitude within the purview of 8 U.S.C. 1251 (a)(4) (*United States ex rel. Cerami* v. *Uhl*, 78 F.2d 698 (C.C.A. 2, 1935); *Tutrone* v. *Shaughnessy*, 160 F. Supp. 433 (S.D.N.Y., 1958); *Matter of S——*, 4 I. & N. Dec. 544 (1951)). In another case in which a minor was not treated as a juvenile delinquent but was convicted in criminal proceedings, it was held that he was admissible notwithstanding the conviction (*Matter of O'N——*, 2 I. & N. Dec. 319 (1945)). Where an alien pleaded guilty in the Superior Court of California to a charge of arson and was then turned over to the Juvenile Court which ordered commitment to a State school, we

held that these factors indicated that he had been made a ward of the Juvenile Court and that his plea of guilty in the Superior Court was not a conviction for the crime of arson (*Matter of T*——, 6 I. & N. Dec. 835 (1955)). These decisions are based on the statutory provisions of the particular jurisdiction, and the respondent's case must, of course, be decided on the basis of the pertinent federal provisions.

When Title 18 of the United States Code was enacted into positive law on June 25, 1948 (62 Stat. 683, 856–858), Part IV was designated "Correction of Youthful Offenders" and it was divided into Chapter 401—General provisions, and Chapter 403—Juvenile delinquency. Chapter 403 was based on the Act of June 16, 1958. Section 2 of the Act of September 30, 1950 (64 Stat. 1085), amended Part IV of Title 18 of the United States Code by inserting "Chapter 402—Federal Youth Corrections Act" immediately after Chapter 401. Hence, the context in which the Federal Youth Corrections Act is found indicates that its provisions and the provisions concerning juvenile delinquency comprise an integrated plan for the correction of youthful offenders as shown by the title itself of Part IV. Under the Federal Youth Corrections Act, a Youth Correction Division was created within the Board of Parole (18 U.S.C. 5005). The Board of Parole and the Bureau of Prisons were separately established agencies within the Department of Justice (18 U.S.C. 4042 and 4201).

18 U.S.C. 5031 provides that a "juvenile" is one who has not attained his 18th birthday and 18 U.S.C. 5006(e) defines a "youth offender" as a person under the age of 22 at the time of conviction. It is significant, however, that throughout the Federal Youth Corrections Act, there is no indication that the commitment is for the purpose of punishment. On the contrary, there are repeated references to "treatment," which is defined in 18 U.S.C. 5006(g) as meaning "corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies of youth offenders."

18 U.S.C. 5006(f) defines "committed youth offender" as one committed for *treatment* to the custody of the Attorney General. 18 U.S.C. 5011 is entitled "Treatment" and is, in part, as follows:

Committed youth offenders * * * shall undergo treatment in institutions * * *, and other agencies that will provide the essential varieties of treatment. * * * Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.

18 U.S.C. 5014 provides that every committed youth offender shall first be sent to a classification center which "shall make a complete study of each committed youth offender, including a mental and

physical examination, to ascertain his personal traits, his capabilities, pertinent circumstances of his school, family life, any previous delinquency or criminal experience, and any mental or physical defect or other factor *contributing to his delinquency. * * ***"** (Emphasis supplied.)

18 U.S.C. 5010 is entitled "Sentence" and subsection (b), under which the respondent was committed, is as follows:

(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, *in lieu of the penalty of imprisonment* otherwise provided by law, sentence the youth offender to the custody of the Attorney General *for treatment and supervision* pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; * * *. (Emphasis supplied.)

From the language of 18 U.S.C. 5010(b), two things are evident. First, the sentence imposed thereunder is *in lieu* of the penalty of imprisonment. Secondly, the court is not required to sentence a youth offender for treatment and supervision because the statute states only that he *may* do so, and 18 U.S.C. 5010(d) specifically provides that if the court finds that the youth offender will not derive benefit from treatment under subsection (b) or (c), the court may sentence the youth offender under any other applicable penalty provision. In other words, in more flagrant cases, the court could direct imprisonment of the offender in the usual manner rather than committing the youth for treatment and supervision.

There is another respect in which commitments of youth offenders differ from the commitments under the general provisions of the criminal laws. 18 U.S.C. 4161 provides, in part *"Each prisoner* convicted of an offense against the United States and *confined in a penal or correctional institution* for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence * * *." Although each prisoner confined to a penal or correctional institution for a definite term who has met the behavior requirements is entitled to a deduction from his sentence, the following specific statement appears at page 40 of the Rules of the United States Board of Parole, effective January 1, 1958: "Good time credits are not earned in the case of those committed under the Youth Corrections Act."

In view of the provisions of the Federal Youth Corrections Act, prescribing treatment rather than punishment, the situation in the respondent's case is analogous to that in *Holzapfel* v. *Wyrsch*, 259 F.2d 890 (C.A. 3, 1958). There an alien was sentenced to confinement in the state reformatory, sentence was suspended, and he was placed in the custody of the probation officer for 3 years, one of

the conditions of probation being that he take psychiatric treatment. The sentence was imposed pursuant to the New Jersey Sex Offenders Act. The court pointed out that such persons are not sentenced as criminals but are given special beneficial treatment, and it was held that this alien was not deportable under the first clause of 8 U.S.C. 1251(a)(4).

In *Cunningham* v. *United States*, 256 F.2d 467, 471–472 (C.A. 5, 1958), the defendant had pleaded guilty to a misdemeanor for which the maximum sentence was one year. He was committed to the custody of the Attorney General under the Federal Youth Corrections Act for from 4 to 6 years. At the expiration of one year from the commencement of his sentence, the defendant instituted proceedings to obtain his release. He contended that the sentence was unlawful. The Court of Appeals sustained the validity of the sentence, stating that this statutory provision is designed to provide correctional treatment instead of punishment and permits youthful offenders to escape the shocks of an ordinary penal sentence. We think it is clear from this case that a sentence imposed under the Federal Youth Corrections Act is not punishment for a crime as contemplated by the first clause of 8 U.S.C. 1251(a)(4), because if it were punishment the court would have had to sustain the defendant's position that the sentence was unlawful. This case also illustrates that if we were to hold that a sentence under the Federal Youth Corrections Act was within the purview of the first clause of 8 U.S.C. 1251(a)(4), the result would be that an adult offender convicted of a crime for which the prescribed penalty or the penalty imposed was less than one year would not be deportable whereas a youthful offender convicted of the same crime and committed to the custody of the Attorney General under 18 U.S.C. 5010(b) for an indefinite term (requiring conditional release on or before 4 years) would be deportable.

The Supreme Court has said that deportation statutes should be strictly construed (*Barber* v. *Gonzales*, 347 U.S. 637, 642 (1954); *Fong Haw Tan* v. *Phelan*, 333 U.S. 6, 10 (1948)). On the basis of the judicial decisions cited and the language of the statutory provisions involved, it is our considered opinion that the commitment of the respondent to the Attorney General for treatment under the Federal Youth Corrections Act is not within the purview of the first clause of 8 U.S.C. 1251(a)(4) and that he is not deportable thereunder. Accordingly, the proceedings will be terminated.

**Order:** It is ordered that the appeal be sustained; that the order of deportation be withdrawn; and that the proceedings be terminated.