## MATTER OF GOODALLE

### In Deportation Proceedings

### A-12346941

#### Decided by Board March 3, 1967

Respondent's conviction of assault in the second degree (by the use of a knife), in violation of subdivision (4) of section 242 of the New York Penal Law is conviction of a crime involving moral turpitude and sentence of respondent, 22 years of age, as a result thereof, to an indeterminate term at the New York State Reformatory at Elmira, N.Y. is a "sentence to confinement" within the meaning of section 241(a)(4) of the Immigration and Nationality Act.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude committed within five years after entry, to wit: assault in the second degree.

ON BEHALF OF RESPONDENT:
Millard A. Ring, Esquire
11 Broadway
New York, New York 10004
(Oral argument)

ON BEHALF OF SERVICE:
Irving A. Appleman,
Appellate Trial Attorney
(Oral argument)

This case comes forward on appeal from the decision of the special inquiry officer, finding respondent deportable as charged, ineligible for any form of discretionary relief, and ordering him deported to England, the country of designation, with an alternate designation of the British West Indies.

Respondent is a 24-year-old single male alien, a native of Antigua, British West Indies and a subject of Great Britain. He was lawfully admitted to the United States for permanent residence in January 1962, on the basis of a petition for nonquota status by his mother, who is a naturalized citizen of the United States.

On January 15, 1965, respondent was convicted in Bronx County, New York, after trial, of assault in the second degree, committed on or about August 23, 1964. On March 15, 1965, he was sentenced to an indefinite term at the State Reformatory at Elmira, New York. He is still serving that sentence.

Respondent, through counsel, admits the factual allegations in the order to show cause but contests deportability on two grounds. First, it is claimed that the crime of which respondent was convicted did not involve moral turpitude. Second, it is urged that he was not "sentenced to confinement", as that term is used in the law.

The crime of assault in the second degree, in violation of section 242 of the Penal Law of the State of New York, is defined in five ways. The one most closely related to the indictment herein is subdivision (4) of section 242, which relates to a person who:

"willfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm."

The indictment charges that respondent and his mother, acting in concert with each other, assaulted the complainant by the use of a knife. (It may be noted that the indictment herein contained four counts, the respondent's mother being charged with him on each count. Respondent's mother was acquitted on all four counts, while respondent was convicted on the one count mentioned above.)

Counsel contends that no knife was ever used and that the weapon actually used was one which neither respondent nor his mother had brought with them; that it was a broken bottle which respondent grabbed from the complainant or one of his group, to prevent the same from being used upon him. Counsel urged that the record of conviction was incomplete because there was no mention of this changed factor; it was then stipulated for the record that if counsel could obtain any evidence or document, under the seal of the clerk of the court, showing the conviction record to be incomplete or incorrect and making the appropriate correction, the same would be accepted in evidence. Such material was not submitted. The record must, therefore, be considered in the light of the charge that a knife was the weapon used. This is not to say that had a broken bottle been used instead of a knife, the character of the crime would have been different. The statute refers not only to a weapon, but to any other instrument or thing likely to produce grievous bodily harm.

As the special inquiry officer pointed out, the Board has ruled, in *Matter of Z—*, 5 I. & N. Dec. 383, that assault in the second degree as defined in subdivision (4) of section 242 of the New York Penal Law, is a crime involving moral turpitude (cf. citation of authority in body and appendix of decision in *Matter of Z—*). In a further attempt to rule out the element of moral turpitude, counsel submitted a letter by Justice George Postel, the justice who presided at the trial and sentencing of respondent. In that letter, the Justice stated that in his opinion the assault arose as a result of a drunken brawl and did not involve moral turpitude. However, we may not go beyond the record

107

of conviction in reaching a conclusion as to whether the crime involves moral turpitude (*U. S. ex rel. Meyer* v. *Day*, 54 F.2d 336, C.A. 2, 1931; *U. S. ex rel. Robinson* v. *Day*, 51 F.2d 1022, C.A. 2, 1931), and the opinion of the Justice on the question of moral turpitude is not a part of that record.

The second facet of the defense is that respondent was not "sentenced to confinement", as that term is used in section 241(a)(4), because he was sentenced to a reformatory, rather than a state prison, and the purpose of the sentence was for rehabilitation rather than punishment. The record of conviction is not very explicit on the matter of the sentence. At the right of the cover or face sheet of the court record (last page of Exhibit 3) there is the following notation:

"March 15, 1965. Committed to New York State Reformatory at Elmira. (signed) George Postel, J.S.C. Hon. George Postel".

In the letter from Justice Postel referred to above there is the statement that respondent was sentenced:

"to an indefinite term to Elmira Reformatory, pursuant to section 288 of the Correction Law and section 2184-a of the Penal Law, following his conviction for an assault in the second degree."

However, since section 2184-a of the Penal Law by its terms relates to male persons between the ages of 16 and 21 years, and respondent, according to the record, was over 22 when the crime was committeed, it appears more likely that the sentencing was under section 2185, which states:

*Reformatory Term for Males between 21 and 30 Years of Age.*

A male between the ages of 21 and 30, convicted of a felony, who has not heretofore been convicted of a crime punishable by imprisonment in a state prison, may, in the discretion of the trial court, be sentenced to imprisonment in the Elmira Reformatory, to be there confined under the provisions of law relating to reformatories. The term of imprisonment of any person sentenced hereunder shall be known as a reformatory term and shall be terminated by the board of parole in the executive department, but such term shall not exceed five years.

The related section 288 of the Correction Law provides:

*Sentence to a Reformatory.*

Any person who is convicted of an offense punishable by a reformatory term, who, upon such conviction is sentenced in accordance with the provisions of section twenty-one eight-four-a, twenty-one eighty-five, or section twenty-one eighty-seven-a of the penal law, and who is committed or transferred to a reformatory, shall be imprisoned according to this article. The term of imprisonment of any person so convicted and sentenced shall be terminated by the board of parole in the executive department, but such imprisonment shall not exceed five years in the case of persons convicted of a felony, and three years in the case of a person convicted of an offense less than a felony.

We have heretofore held that not every confinement, pursuant to court order, after conviction of crime, is such a "sentence to confinement" as will support a charge of deportability under section 241 (a)(4) (see *Matter of V—*, 8 I. & N. Dec. 360 and *Matter of N—*, 8 I. & N. Dec. 660, for discussion and citation of other cases). Primarily, these holdings have related to commitment of persons under 21 years of age to state or federal youth authorities for training and treatment rather than retributive punishment. (See, also *Holzapfel* v. *Wyrsch*, 259 F.2d 890 (C.A. 3, 1958), where the court held that the suspension of sentencing of an alien, not a minor, upon condition that as part of a three-year probation period he take psychiatric treatment, under the provisions of the New Jersey Sex Offenders Act, was not a sentence to confinement within the purview of section 241(a)(4) but was a requirement that the alien submit to beneficial treatment.)

We have not had before us the specific question here posed, whether a 22-year-old, convicted of a felony, and sentenced to an indeterminate term at Elmira Reformatory, rather than at a state prison, has been sentenced to confinement. This question has been considered by the Second Circuit in *United States ex rel. Popoff* v. *Reimer*, 79 F.2d 513 (1935). That case involved an alien who, when he was seventeen years of age, pleaded guilty to an indictment charging grand larceny in the second degree, and was sentenced to be "imprisoned in the New York State Reformatory at Elmira * * *". Relying upon a recently decided case, *Cerami* v. *Uhl*, 78 F.2d 698, in which it had been held that a 17-year-old alien who had been committed to the House of Refuge on Randalls Island, New York City, for a term which might continue during his minority, had not received such a sentence of imprisonment as would subject him to deportation, the alien claimed that his sentence to the reformatory was the same type of sentence. The court compared the two situations:

When the local statutes relating to the respective institutions are examined, important differences become at once apparent. Commitment to the house of refuge is pursuant to section 2184 of the Penal Law * * *. It relates to boys between the ages of 16 and 18 and provides that, instead of sentencing the offender to imprisonment in a state prison or a penitentiary, the court may direct him to be confined in a house of refuge established by the managers of the society for the reformation of juvenile delinquents in the City of New York. Commitment to a reformatory is governed by section 2185, which in 1919 provided that a male between the ages of 16 and 30, convicted of a felony, might, in the discretion of the trial court, be sentenced to imprisonment in the New York State Reformatory at Elmira. * * * Thus the statute itself, unlike section 2184, refers to commitment to the reformatory as 'imprisonment', relates only to felons, and includes men who may be 30 years of age. Felony was defined as a crime punishable by imprisonment in a state prison * * * and only an offender who was sen-

109

tenced to one year or more could be sent to the state prison * * *. Hence no one could be committed to the reformatory unless he had committed a crime for which he could have been sentenced to a term of imprisonment of one year or more. Moreover, an incorrigible inmate of the house of refuge might be transferred to the reformatory. * * * From the foregoing references to the statutes it is apparent that imprisonment in a reformatory was awarded to more serious offenders and was regarded as more punitive than confinement in a house of refuge. The duration of imprisonment in the reformatory was uncertain, but the indeterminate duration of a sentence which may exceed one year has already been held no obstacle to deportation under the Immigration Act. United States ex rel. Paladino v. Commissioner, 43 F.(2d) 821 (C.C.A.2). Reformation of the criminal is one of the objects of legislation permitting an indeterminate sentence. Because commitment to a reformatory aims to reform as well as to punish, we cannot hold that the appellant has not been sentenced to imprisonment, particularly when the very terms of the statute under which he was committed say that he has. In modern times all penal discipline has some element of reformation, and we should have to count out all sentences if that alone were sufficient to create an exception. The most that can be drawn from the *Cerami* Case, *supra*, is that, where the 'prime object' of confinement is correctional and the punitive element relatively insignificant, there is no 'sentence to imprisonment' within the contemplation of the Immigration Act. As has been shown above, the punitive purpose is clearly more substantial in the provisions for confinement in the state reformatory. We deem it sufficiently substantial to require a different conclusion. That commitment to a reformatory was a 'sentence to imprisonment' was implicit in the decision of this court in the *Paladino* Case, *supra*. It was explicit in the holdings of two District Court cases. United States ex rel. Sirtie v. Commissioner, 6 F. (2d) 233 (D.C.N.Y.) ; United States ex rel. Morlacci v. Smith, 8 F.(2d) 663 (D.C.,W.D.N.Y.). Whether United States ex rel Rizzio v. Kenney, 50 F. (2d) 418 (D.C. Conn.) can be reconciled with them because of differences in statutes relating to reformatories in Connecticut need not be now considered.

Thus, in the Second Circuit, where the case before us arises, the court considered that a sentence to the Reformatory at Elmira of a 17-year-old alien was a sentence to confinement sufficient to bring him within the deportation provisions of the Immigration Act. This was held to be so at a time when, as the special inquiry officer pointed out, the law referred only to a sentence to imprisonment, and did not specify, as it does now, that the confinement could be "in a prison or corrective institution." Further, we have held that a sentence to the Illinois State Reformatory in Pontiac, Illinois is a sentence to imprisonment under the immigration laws. *Matter of C—*, 5 I. & N. Dec. 370.

It is established that respondent was admitted for permanent residence in January 1962, and that in 1965, within five years, he was convicted of a crime involving moral turpitude committed in 1964; that he was sentenced to an indeterminate term in a State Correctional Institution, and has actually been confined for more than one year under that sentence. On the basis thereof, we hold, with the special inquiry officer, that respondent is deportable as charged.

Since respondent's conviction of a crime involving moral turpitude was less than five years prior to the date of the hearing, and since voluntary departure requires a showing of five years of good moral character, which cannot be met in view of the provisions of section 101(f)(3) of the Act, the respondent is statutorily ineligible for voluntary departure. The special inquiry officer was, therefore, correct in ordering that he be deported.

**ORDER:** It is ordered that the appeal herein be and the same is hereby dismissed.