PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

MOHAMMAD MUSA YOUSEFI, a/k/a
Mohammad M. Yousefi, a/k/a
Mohammad Yousafi, a/k/a
Mohammed Yousefi,
Petitioner,

v.

No. 00-1328

U.S. IMMIGRATION & NATURALIZATION
SERVICE; JOHN ASHCROFT, Attorney
General,
Respondents.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A40-205-788)

Argued: January 22, 2001

Decided: August 8, 2001

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by published per
curiam opinion.

_____

COUNSEL

**ARGUED:** Judith Leslie Wood, Los Angeles, California, for Peti-
tioner. Linda Sue Wernery, Office of Immigration Litigation, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-

ington, D.C., for Respondents. **ON BRIEF:** Jesse A. Moorman, Los Angeles, California, for Petitioner. David W. Ogden, Assistant Attorney General, Kristen Giuffreda Chapman, Senior Litigation Counsel, Loreto S. Geisse, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents.

_____

## OPINION

PER CURIAM:

Mohammad Musa Yousefi ("Yousefi") filed this petition for review of an order of the Board of Immigration Appeals ("the Board") concluding that Yousefi was deportable and that he was ineligible for asylum and withholding of deportation. The Immigration and Naturalization Service ("the Service") contends that we do not possess jurisdiction to review Yousefi's petition. We hold that we have jurisdiction to consider Yousefi's petition. On the merits, we agree with the Board that Yousefi is deportable; however, in our view, the Board's decision that Yousefi committed a "particularly serious crime," rendering him ineligible for asylum and withholding of deportation, was arbitrary and must be set aside. Accordingly, we remand for further consideration of whether Yousefi was convicted of a particularly serious crime.

I.

Yousefi, a native of Afghanistan, entered the United States in 1987 as a lawful permanent resident. Less than one year after entering the United States, Yousefi was arrested for willfully concealing a poncho belonging to a K-Mart store with the intent to convert it to his own use, in violation of Virginia law. See Va. Code Ann. § 18.2-103. Yousefi pled nolo contendere and received a ten-day sentence, which was suspended.

In 1988, Yousefi was charged in the Superior Court of the District of Columbia with assault with a dangerous weapon, see 22 D.C. Code Ann. § 22-502, and assault with intent to kill while armed with a dan-

2

gerous weapon, see D.C. Code Ann. §§ 22-502, 22-3202. He pled guilty to assault with a dangerous weapon and received a prison sentence of 15 to 45 months, which was suspended, and 15 months probation. The assault with intent to kill charge was dismissed. The dangerous weapon charged in the indictment was a rock.

Finally, in December 1989, Yousefi was again charged with willfully concealing store merchandise in violation of section 18.2-103 of the Virginia Code. He pled guilty and received a suspended ten-day sentence.

In June 1991, based on these three convictions, the Service issued an order to show cause seeking to deport Yousefi under what was then section 241(a)(2)(A)(ii) of the Immigration and Nationality Act (INA), see 8 U.S.C. § 1251(a)(2)(A)(ii) (Supp. IV 1992), for having been convicted of two crimes of moral turpitude not arising from the same scheme of criminal conduct, and section 241(a)(2)(A)(i), see 8 U.S.C. § 1251(a)(2)(A)(i) (Supp. IV 1992), for having been convicted of a crime of moral turpitude within five years after entry and sentenced to confinement for a year or more.[1]

Before the immigration judge, Yousefi admitted the underlying crimes but denied deportability on the basis that the crimes were not crimes of moral turpitude because they were petty in scope and nature. The immigration judge disagreed with Yousefi, and concluded that all three crimes qualified as crimes of moral turpitude. Yousefi then petitioned the immigration judge for relief from deportation. He sought asylum under INA § 208(a) and withholding of deportation under INA § 243(h)(1).[2] The immigration judge concluded that

_____

[1] The INA was revamped in 1996 by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009-546 (1996). Under IIRIRA, INA§ 241(a)(2)(A), formerly codified at 8 U.S.C. § 1251(a)(2)(A), was generally left intact but it was redesignated as INA § 237(a)(2)(A) and codified in 8 U.S.C.A. § 1227(a)(2)(A) (West 1999). See IIRIRA § 305(a)(2). Because Yousefi was in deportation proceedings prior to April 1, 1997, the effective date of IIRIRA, we apply the pre-amendment version of INA§ 241. See IIRIRA §§ 309(a), (c)(1).
[2] IIRIRA § 604 substantially amended asylum procedures under INA § 208; however, because Yousefi applied for asylum prior to the enact-

Yousefi was statutorily ineligible for withholding of deportation because the conviction for assault with a dangerous weapon amounted to a "particularly serious crime." <u>See</u> INA § 243(h)(2)(B), 8 U.S.C. § 1253(h)(2)(B). And, the immigration judge ultimately determined that Yousefi was ineligible for asylum under the regulations accompanying the INA. <u>See</u> 8 C.F.R. § 208.14(c) (1992).

On appeal to the Board, Yousefi challenged the immigration judge's conclusion that he was ineligible for asylum and withholding of deportation as well as the determination that he was deportable in the first place. The Board agreed with the immigration judge that all three underlying convictions were for crimes of moral turpitude and that Yousefi was therefore deportable under INA§ 241(a)(2)(A)(i) and INA § 241(a)(2)(A)(ii). The Board rejected the argument that the concealment convictions were too petty to constitute crimes of moral turpitude, noting that "both the courts and the Board have historically held that crimes of theft involve moral turpitude, regardless of the amount stolen or the sentence imposed." A.R. 4. With respect to Yousefi's eligibility for asylum or withholding of deportation, the Board concluded that Yousefi was barred from relief because the conviction for assault with a dangerous weapon was a"particularly serious crime." The Board dismissed Yousefi's appeal.

Yousefi petitions us for review of the Board's decision. He raises the same arguments he raised below; however, Yousefi makes the additional argument that the proceedings before the immigration judge failed to comport with due process. The Service, however, suggests that under IIRIRA § 309(c)(4)(G), which was enacted after the immigration judge's 1992 decision but before the Board rendered its decision in 2000, we lack jurisdiction to entertain the petition for review. If we do have jurisdiction, the Service contends that the Board correctly disposed of the merits.

_____

ment of IIRIRA, we apply the pre-amendment version of INA § 208. <u>See</u> IIRIRA §§ 309(a), (c)(1). The withholding of deportation provision, appearing in INA § 243(h) and codified at 8 U.S.C. § 1253(h), was repealed. <u>See</u> IIRIRA § 307. A similar form of relief is still available, however, under the current INA § 241(b)(3). <u>See</u> 8 U.S.C.A. § 1231(b)(3) (West 1999). Again, we will apply former INA § 243(h) since Yousefi was in deportation proceedings prior to April 1, 1997. <u>See</u> IIRIRA §§ 309(a), (c)(1).

4

II.

We first consider the question of subject matter jurisdiction. The Service contends that IIRIRA § 309(c)(4)(G) strips us of jurisdiction to review the Board's decision. Section 309(c)(4) of IIRIRA contains transitional rules for judicial review that apply to aliens who were involved in deportation proceedings prior to April 1, 1997, and were issued a final deportation order more than thirty days after September 30, 1996, the date IIRIRA was enacted. These transitional rules apply to Yousefi, who was placed into deportation proceedings in February 1992 but was not issued a final order until February 28, 2000.

The transitional rules direct that

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in . . . section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of [September 30, 1996]).

IIRIRA § 309(c)(4)(G). The Service insists that Yousefi's conviction for assault with a dangerous weapon constituted an aggravated felony under INA § 241(a)(2)(A)(iii). That section provided that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." See INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii) (Supp. IV 1992). Therefore, the Service contends that Yousefi was "deportable by reason of having committed a criminal offense covered in . . . section 241(a)(2)(A)(iii)," precluding this court from exercising jurisdiction over his petition for review.

As we have observed numerous times, "the jurisdictional limitation under the transitional rules [is] triggered by two jurisdictional facts -- whether the deportee [is] an alien and whether he [has] been convicted of an offense enumerated in the statute." Lewis v. INS, 194 F.3d 539, 542 (4th Cir. 1999). Regardless of the eventual outcome of our jurisdictional analysis, we always have the power to assess whether such jurisdictional facts are present. See id. ("Because our jurisdiction turns on the presence, or lack thereof, of these two facts, we have jurisdiction to review them."). Yousefi is an alien.[3] The only

_____

**3** Yousefi filed a last-minute motion to be declared a national of the United States. We conclude the motion is wholly without merit and deny it.

5

question is whether he is deportable by reason of having committed an aggravated felony within the meaning of INA § 241(a)(2)(A)(iii).

Before we can address this issue, however, we must first consider the consequences of the Service's failure to charge Yousefi's commission of an aggravated felony as a legal ground for deporting him. Although the Service included Yousefi's conviction for assault with a dangerous weapon in the factual allegations contained in the order to show cause, the Service did not seek to deport Yousefi on the ground that he committed an aggravated felony under INA § 241(a)(2)(A)(iii). Rather, the Service charged that Yousefi was deportable because he had committed two or more crimes of moral turpitude under INA § 241(a)(2)(A)(ii), and that he had committed a crime of moral turpitude within five years after entry under INA § 241(a)(2)(A)(i). Thus, although Yousefi's conviction for assault with a dangerous weapon was one of the predicate crimes of moral turpitude, the Service did not raise the aggravated felony ground for deportability in its order to show cause, in the proceedings before the immigration judge, or during the appeal to the Board.

The Service takes the position that as long as an alien has been convicted of a crime covered under IIRIRA § 309(c)(4)(G), then he "is inadmissible or deportable by reason of" such conviction regardless of whether such conviction served as the basis for deportation. According to the Service, the jurisdiction-stripping effect of IIRIRA § 309(c)(4)(G) is triggered simply by an alien's commission of an aggravated felony at any time after entry into the United States -- the alien does not ever have to actually be charged by the Service with committing an aggravated felony.

Yousefi argues that it is fundamentally unfair for him now to be denied appellate review based on a ground -- the commission of an aggravated felony -- that was not charged by the Service as a basis for deporting him. Yousefi never had an opportunity below to challenge the legal characterization of his assault conviction as an aggravated felony. He suggests that due process requires that he first be permitted to mount his challenge before the immigration judge.

It is important to recognize that Yousefi's complaint is that the Service has asserted a new legal ground for deportation; the factual

6

ground for saying that Yousefi committed an aggravated felony -- the conviction for assault with a dangerous weapon -- is not new and was included by the Service in its order to show cause. This distinction is important because we are generally permitted to "look only to the offense of conviction itself to determine whether we have jurisdiction" rather than the circumstances surrounding the conviction. Hall v. INS, 167 F.3d 852, 856 (4th Cir. 1999). Thus, when "a criminal statute on its face fits the INA's deportability classification, all convictions under that statute necessarily render an alien deportable." Id. Yousefi's conviction is contained in the record; whether it can be characterized as an aggravated felony under the INA is purely a question of law that requires no additional factual development. Yousefi has certainly had an opportunity in this court to argue against the classification of his assault offense as an aggravated felony. Accordingly, we cannot agree with Yousefi that, under the circumstances, due process prevents the application of IIRIRA § 309(c)(4)(G) in the present case. Cf. id. at 856-57 (suggesting that the alien had received "perhaps more" process than was due where an Article III court, in addition to an immigration judge and the Board of Immigration Appeals, had determined that the underlying offense on its face rendered him deportable).

Nevertheless, we conclude it is the language of IIRIRA § 309(c)(4)(G) itself, rather than due process, that precludes the jurisdictional bar from applying in this case. In our view, Congress stripped us of jurisdiction only if the alien's aggravated felony was actually the basis, or one of the bases, of the final order of deportation. The provision stating that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed [an enumerated] criminal offense," IIRIRA § 309(c)(4)(G), applies to final orders of deportation.[4] Thus, we read the text to mean that there shall be no appeal from a final order which directs that an alien be deported because he committed an aggravated felony or another offense enumerated in section 309(c)(4)(G).

_____

[4] The first paragraph of section 309(c)(4) makes it clear that the restriction on appellate review applies to "final order[s] of exclusion of deportation . . . entered more than 30 days after the date of the enactment of [IIRIRA]."

The First Circuit Court of Appeals considered a similar jurisdiction-stripping provision contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, and reached the same conclusion we do. See Choeum v. INS, 129 F.3d 29, 38 (1st Cir. 1997). We find that court's reasoning persuasive:

> According to the INS, for purposes of jurisdiction, aliens "deport<u>able</u> by reason of" having committed firearms offenses are not only those aliens who <u>have been ordered deported</u> for firearms offenses, but also those aliens who <u>could</u> be deported for that reason. As a matter of statutory construction, that argument is somewhat illogical: The contested phrase comes from Section 440(a) of AEDPA, a statutory section concerned with final orders of deportation. The section therefore applies, by its very terms, only to aliens who have actually been adjudged deportable. It is therefore highly doubtful that, in that context, Congress meant "deportable by reason of" to mean, as the INS would have it, "potentially susceptible to being deported by reason of...."

Id. at 38; see also Xiong v. INS, 173 F.3d 601, 608 (7th Cir. 1999).

The Service argues that as long as Yousefi committed a crime that qualifies as an "aggravated felony," judicial review is cut off regardless of whether the final order charged Yousefi with deportability based on his status as an aggravated felon. Like the First Circuit, we reject the premise of this reading of the statute-- that if an alien is <u>potentially</u> removable based on one of the crimes enumerated in IIRIRA § 309(c)(4)(G), then the jurisdictional bar applies. We recognize there is authority to the contrary. See Lopez-Elias v. Reno, 209 F.3d 788, 793 (5th Cir. 2000), cert. denied, 121 S. Ct. 757 (2001); Abdel-Razek v. INS, 114 F.3d 831, 832 (9th Cir. 1997). However, these decisions do not explicitly parse the language of the statute. Accordingly, we are inclined to agree with Choeum. We conclude that the jurisdictional bar of the transitional rules does not apply in this case.

8

III.

Turning to the merits of Yousefi's appeal, we first consider Yousefi's argument that the Board erroneously concluded that his convictions qualified as crimes of moral turpitude and therefore rendered him deportable. When reviewing an agency determination, federal courts accord substantial deference to the agency's interpretation of the statutes and regulations that it administers. See INS v. Cardoza-Fonseca, 480 U.S. 421, 448 (1987). Thus, we give "due deference to the [Board's] interpretation of the deportation statute," Cabral v. INS, 15 F.3d 193, 194 (1st Cir. 1994), provided it is "`based on a permissible construction of the statute.'" Akindemowo v. INS, 61 F.3d 282, 284 (4th Cir. 1995) (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984)). The Chevron framework provides the appropriate method for analyzing the Board's determination of what type of conduct involves moral turpitude for purposes of the INA. See Michel v. INS, 206 F.3d 253, 262 (2d Cir. 2000); Franklin v. INS, 72 F.3d 571, 572 (8th Cir. 1995); Cabral, 15 F.3d at 194. But see Franklin, 72 F.3d at 575-80 (Bennett, J., dissenting) (noting apparent circuit split). Congress did not define "crime involving moral turpitude," leaving the phrase to administrative and judicial interpretation. See Cabral, 15 F.3d at 195. Thus, under Chevron we must defer to the Board's decision provided the interpretation "is not an unreasonable one." Lewis, 194 F.3d at 544.

We conclude that the Board's determination was reasonable. Since Yousefi admitted the underlying convictions, our task is simply to look to the offense of conviction to determine if it qualifies as a "crime of moral turpitude." The Board decided that all three of Yousefi's predicate crimes qualified as crimes of moral turpitude.

First, we agree with the Service that Yousefi has technically waived his argument that the Board erred in its determination that he is deportable for having committed a crime of moral turpitude within five years of entry into the United States, namely his conviction for assault with a dangerous weapon in 1989. Because Yousefi's opening brief fails to raise a challenge to the Board's conclusion that Yousefi's 1989 conviction for assault with a dangerous weapon qualifies as a crime of moral turpitude, he has abandoned it. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999). The fact that

9

Yousefi pursues this issue in his reply brief does not redeem his failure to do so in the opening brief. See Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996). On this basis alone, we affirm the Board's determination that Yousefi was deportable under INA § 241(a)(2)(A)(i).

Even if Yousefi had not technically abandoned this argument on appeal, we would agree with the Board that his conviction for assault with a dangerous weapon amounted to a crime of moral turpitude under INA § 241(a)(2)(A)(1). The Board looks to the elements of the crime rather than to the facts surrounding each crime. See Castle v. INS, 541 F.2d 1064, 1066 (4th Cir. 1976) (per curiam). Yousefi pled guilty in the Superior Court for the District of Columbia to assault with a dangerous weapon in violation of the law of the District of Columbia. See D.C. Code Ann. § 22-502 ("Every person convicted of . . . assault with a dangerous weapon, shall be sentenced to imprisonment for not more than 10 years."). The elements of this offense include the elements of simple assault, in addition to the use of a dangerous weapon to commit the assault. See Williamson v. United States, 445 A.2d 975, 978 (D.C. 1982). A "dangerous weapon" as contemplated by this statute is one that is likely to produce death or serious bodily injury. See Powell v. United States, 485 A.2d 596, 601 (D.C. 1984). Assault with a deadly weapon, a closely analogous offense, is a crime of moral turpitude for deportation purposes. See Matter of Medina, 15 I & N Dec. 611, 614 (B.I.A. 1976); Matter of Ptasi, 12 I & N Dec. 790, 791 (B.I.A. 1968); Matter of Goodalle, 12 I & N Dec. 106, 107 (B.I.A. 1967); see also Pichardo v. INS, 104 F.3d 756, 760 (5th Cir. 1997) (recognizing that assault with a deadly weapon under Pennsylvania law is well-settled as a crime of moral turpitude). We do not discern an appreciable difference between assaulting someone with a deadly weapon as opposed to one that is merely "dangerous" (and therefore likely to produce, at the least, serious bodily injury) such that one crime involves moral turpitude and the other does not. Accordingly, we affirm the Board's conclusion that Yousefi is deportable under INA § 241(a)(2)(A)(i). See 8 U.S.C.A. § 1251(a)(2)(A)(i).[5]

_____

[5] In view of our conclusion, we decline to address the Board's alternative basis for concluding that Yousefi is deportable-- that he committed two crimes of moral turpitude not arising from the same scheme of criminal conduct under INA § 241(a)(2)(A)(ii). See 8 U.S.C. § 1251(a)(2)(A)(ii). Thus, we need not decide whether Yousefi's convictions for unlawful concealment were crimes of moral turpitude.

IV.

After concluding that Yousefi's predicate crimes involved moral turpitude and rendered him deportable, the immigration judge determined that the conviction for assault with a dangerous weapon was a "particularly serious crime" and that Yousefi was therefore ineligible for asylum and withholding of deportation. The Board affirmed. On appeal, Yousefi argues that the Board failed to properly consider the facts and circumstances underlying his conviction for assault with a dangerous weapon which, according to Yousefi, make it clear he did not commit a "particularly serious crime."

Under the pre-IIRIRA statutory regime, a deportable alien could seek to avoid deportation in two ways. See INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987). First, the alien could apply for asylum, see INA § 208(b), 8 U.S.C. § 1158(b), which the Attorney General could grant in his or her discretion to an alien who could not or would not return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Second, if an alien established that, if deported, his "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion," the Attorney General was required to withhold deportation. See INA § 243(h)(1), 8 U.S.C. § 1253(h)(1). It was easier for an otherwise deportable alien to establish eligibility for asylum than for withholding of deportation; however, once eligibility for relief was established, the Attorney General could still refuse to grant asylum but could not deny withholding of deportation. See Osorio v. INS, 18 F.3d 1017, 1021 (2nd Cir. 1994). Moreover, "[w]hereas withholding only bars deporting an alien to a particular country or countries, a grant of asylum permits an alien to remain in the United States and to apply for permanent residency after one year." INS v. Aguirre-Aguirre, 526 U.S. 415, 419 (1999).

At the time of Yousefi's deportation proceedings, an alien who, "having been convicted . . . of a particularly serious crime, constitute[d] a danger to the community of the United States," was statutorily ineligible for withholding of deportation, see INA § 243(h)(2)(B), 8 U.S.C. § 1253(h)(2)(b), and was subject to a manda-

11

tory denial of asylum under the federal immigration regulations, see 8 C.F.R. § 208.14(c)(1).[6] If an alien has been convicted of an offense that qualifies as a "particularly serious crime," then the alien is necessarily a danger to the community and is ineligible for withholding of deportation. See Kofa v. INS, 60 F.3d 1084, 1088 (4th Cir. 1995) (en banc) ("[O]nce the particularly serious crime determination is made, the alien is ineligible for withholding without a separate finding on dangerousness.").

The statutes did not define a "particularly serious crime" or list its attributes. Consequently, the Board in Matter of Frentescu, 18 I. & N. Dec. 244 (B.I.A. 1982), took care of the ambiguity by establishing criteria for determining whether a given crime amounts to a "particularly serious" one. The Board began by emphasizing that "the record in most proceedings will have to be analyzed on a case-by-case basis." Id. at 247. The Board then listed the factors to be considered in "judging the seriousness" of a crime: "[1] the nature of the conviction, [2] the circumstances and underlying facts of the conviction, [3] the type of sentence imposed, and, [4] most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." Id. When the crime is against a person, the likelihood that the offense will be classified as a "particularly serious crime" is increased. See id. Moreover, there are crimes that qualify categorically as "particularly serious crimes." In such cases, there does not need to be a rigid application of the Frentescu factors. See Hamama v. INS, 78 F.3d 233, 240 (6th Cir. 1996) (recognizing that "[t]he [Board] . . . has the prerogative to declare a crime particularly serious without examining each and every Frentescu factor").

The circumstances in Frentescu and the Board's decision making process in that case are instructive. The Board considered the following: Frentescu, who was an alien, had been convicted of burglary. He entered a dwelling, but there was no indication that the dwelling was occupied at the time. There was no evidence that Frentescu was

_____

[6] Under IIRIRA, an alien who commits a "particularly serious crime" is now statutorily ineligible for asylum, see INA § 208(b)(2)(ii), 8 U.S.C.A. § 1158(b)(2)(ii) (West 1999), as well as for withholding of deportation (which is now referred to as removal), see INA § 241(b)(3)(B)(ii), 8 U.S.C.A. § 1231(b)(3)(B)(ii) (West 1999).

12

armed, nor was there any other indication of an aggravating circumstance. Finally, Frentescu was sentenced to time served (three months) and placed on probation for one year. Frentescu's sentence, the Board concluded, indicated that the state court judge did not regard him as a danger to the community. After "considering the totality of the circumstances . . . concerning [Frentescu's] crime," the Board concluded that the crime was not particularly serious and that Frentescu was not precluded from seeking asylum or withholding of deportation. Id.

Frentescu, decided in 1982, continues to supply the standard for identifying a particularly serious crime. The standard is applied through a case-by-case analysis of the circumstances, even when the name of the crime sounds quite serious. For instance, in In re S-S-, Interim Decision 3374, 1999 WL 38822 (B.I.A. Jan. 21, 1999), the Board conducted a case-specific analysis of the circumstances to determine whether the alien's armed robbery conviction was a particularly serious crime. The Board reviewed the following information: The alien and two accomplices, with the alien displaying a handgun, broke into a home and stole jewelry and purses from two women. One of the women was taken out of the shower during the robbery, and her six-year-old child witnessed the events. The prosecutor, based on information that the alien could be responsible for numerous other robberies involving the use of violence and firearms, requested bail at $100,000. Finally, after conviction the alien received a 55-month sentence and an additional two years in community placement. The Board concluded that "a robbery offense entailing these circumstances" is a particularly serious crime. Id. See also In re L-S-, Interim Decision 3386, 1999 WL 219344 (B.I.A. Apr. 16, 1999) (crime of alien smuggling for commercial gain was not particularly serious because the alien-smuggler had no intention of harming the smuggled alien, and the alien-smuggler spent only three-and-a-half months in prison); In re L-S-J-, 21 I. & N. Dec. 973 (B.I.A. 1997) (crime of robbery with a deadly weapon was particularly serious because the alien, wielding a handgun, stole $600 from several people in an apartment and threatened violence against them).

Yousefi contends that the immigration judge and the Board ignored important elements of the Frentescu standard and failed to conduct an

13

adequate case-specific analysis.[7] We cannot defer to an agency decision that is "arbitrary, capricious, or manifestly contrary to the statute." See Chevron, 467 U.S. at 844. An agency decision "would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider [or has] entirely failed to consider an important aspect of the problem." Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

In this case we are compelled to find the decisions of the Immigration judge and Board to be arbitrary and capricious. The deportation proceedings against Yousefi have been plagued by a complete failure of the decision makers to consider key Frentescu factors. Again, the four Frentescu factors are: (1) the nature of the conviction, (2) the type of sentence imposed, (3) the circumstances and underlying facts of the conviction, and (4) whether the type and circumstances of the crime indicate that the alien will pose a danger to the community. See Matter of Frentescu, 18 I. & N. Dec. 244, 247 (B.I.A. 1982). The last two factors are the most important because unless they are considered, the record has not been "analyzed on a case-by-case basis," as required by Frentescu. Id. In Yousefi's case the immigration judge and the Board considered only the first two factors, the nature of his conviction (guilty of assault with a dangerous weapon) and the sentence imposed (suspended sentence of 15 to 45 months in jail). Moreover, both the immigration judge and the Board considered irrelevant factors. The immigration judge relied on an indictment count (assault with intent to kill) that had been dismissed, and the Board relied on a conviction (for simple assault) that was not alleged in the Service's order to show cause or in any additional charge. The Frentescu standard focuses on the crime that the Service claims is particularly seri-

_____

[7] Yousefi alleges that his crime, assault with a dangerous weapon, was not particularly serious under the circumstances. Yousefi claims that a competing hotdog vendor threatened Yousefi and ultimately hit him in the face and bloodied his nose. According to Yousefi, the competing vendor was charged by the police, and Yousefi offered evidence against him. A month or so later the other vendor resumed his harassment of Yousefi, and one day he spit in Yousefi's face. The spitting incident triggered the events that led to Yousefi's conviction for assault with a deadly weapon. Yousefi maintains, however, that the victim was not hit with a rock.

14

ous, and the standard does not call for consideration of conduct that is unrelated to that crime. We can find no authority for the proposition that dismissed counts or crimes not relied upon by the Service may be considered in determining whether a specific crime is a particularly serious one. Cf. 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii) (barring the Attorney General from granting asylum or withholding of deportation to an alien who has been "convicted" of a particularly serious crime); id. § 1229(a)(1) (requiring "written notice" specifying the "charges against the alien"); 8 C.F.R. 240.10(e) (allowing the Service to lodge additional charges "[a]t any time during the proceeding," if they are "in writing" and served upon the alien).

The more significant problem is that the immigration judge and the Board failed to consider the most important Frentescu factors, specifically, the circumstances and underlying facts of the conviction and whether the circumstances of the crime indicate that Yousefi would be a danger to the community. Because the Board failed to consider the two most important Frentescu factors and relied on improper considerations, we conclude that the Board's decision was arbitrary and capricious. See State Farm, 463 U.S. at 43 (explaining that agency action is arbitrary and capricious if it "entirely fail[s] to consider an important aspect of the problem").

Thus, we vacate the Board's decision insofar as it determines that Yousefi committed a particularly serious crime and remand the case to the Board with the instruction that it, in turn, remand to the immigration judge for reconsideration of the particularly serious crime issue in accordance with the requirements of Frentescu. If the Board determines that Yousefi's assault crime was not particularly serious, that would simply afford him the opportunity to press his case for asylum and withholding of deportation.**8**

_____

**8** In its brief, the Service included a one-line alternative argument that Yousefi is barred from seeking withholding of deportation or asylum because his assault conviction qualifies as an aggravated felony. The Service did not make this argument to the immigration judge or the Board, and the argument was not fully developed in the Service's brief. We decline to address this issue. Cf. Unemployment Comp. Comm'n v. Aragon, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the[agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.").

15

V.

For the foregoing reasons, we hold that we have jurisdiction to consider Yousefi's petition for review, but we vacate the Board's decision insofar as it determines that Yousefi committed a particularly serious crime and remand the case to the Board with the instruction that it, in turn, remand to the immigration judge for reconsideration of the particularly serious crime issue in accordance with the requirements of <u>Frentescu</u>.

<u>AFFIRMED IN PART, VACATED IN PART,
AND REMANDED</u>

16