**Deon Hugh MOORE, Petitioner,**

**v.**

**Ja–Nel C. JAMES, Director, Norfolk, Virginia Field Office of United States Citizenship and Immigration Services, Alejandro Mayorkas, Director, United States Citizenship and Immigration Services, and, Eric Holder, Attorney General of the United States, Respondents.**

**Action No. 2:10cv561.**

United States District Court, E.D. Virginia, Norfolk Division.

March 15, 2011.

Arturas Overas, Hyder & Galston, Richmond, VA, for Petitioner.

Lawrence Richard Leonard, United States Attorney Office, Norfolk, VA, Craig William Kuhn, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, Elizabeth Joanne Stevens, Fairfax, VA, for Respondents.

### MEMORANDUM OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on respondents' motion to dismiss petitioner's Petition for Review of Application for Naturalization Pursuant to 8 U.S.C. § 1421(c)

and Request for De Novo Hearing ("Petition"), pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") or, in the alternative, for summary judgment, pursuant to Federal Rule of Civil Procedure 56 ("Motion for Summary Judgment"). For the reasons set forth below, respondents' Motion to Dismiss is **GRANTED.**

### I. Factual and Procedural History

Petitioner Deon Hugh Moore ("Moore") was born in Guyana on November 8, 1965. He has been a legal permanent resident of the United States since November 3, 1978. Moore served honorably in the United States Navy from October 2, 1985, until September 29, 1993, when he was honorably discharged. His service included deployments during Operation Desert Storm in the 1990s. On or about September 19, 1996, Moore filed an application for naturalization with the former Immigration and Naturalization Service [now the United States Citizenship and Immigration Services ("USCIS")]. No action was taken on Moore's application until April, 2010.

The following factual and procedural history occurred after the filing of the initial application in 1996. On August 16, 2004, Moore was convicted in the Circuit Court for the City of Virginia Beach, Virginia, of three counts of Possession of Marijuana with Intent to Distribute, in violation of Va.Code § 18.2–248.1. On November 10, 2004, that court sentenced Moore to five years incarceration on two counts of Possession of Marijuana with Intent to Distribute more than one-half ounce but less than five pounds of marijuana, and to twenty years incarceration on one count of Possession of Marijuana with the Intent to Distribute more than five pounds of marijuana. The court suspended all but four years of the sentence on certain conditions. On October 26, 2004, Moore was convicted in the Circuit Court for the City of Nor-

folk, Virginia, of Possession of Marijuana with Intent to Distribute, in violation of Va.Code § 18.2–248.1. On January 7, 2005, that court sentenced Moore to twelve years and nine months incarceration. The sentence, which ran consecutive with all other sentences, was suspended for ten years.

On April 14, 2010, Moore filed a second application for naturalization with the US-CIS on the basis of qualifying active-duty military service during a period of military hostilities pursuant to 8 U.S.C. § 1440. On April 27, 2010, USCIS denied Moore's first application due to poor moral character, citing his multiple convictions for Possession of Marijuana with Intent to Distribute, as well as the fact that he was scheduled to be on probation for thirty years following release from incarceration. Moore did not appeal this denial. On July 20, 2010, USCIS denied Moore's second application, again, due to poor moral character, and, again, citing his convictions for Possession of Marijuana with Intent to Distribute and the fact that he was scheduled to be on probation for thirty years following release from incarceration. Moore filed a timely Request for a Hearing to administratively appeal this denial. On September 21, 2010, USCIS affirmed the denial.

On November 15, 2010, Moore filed the instant Petition. Moore asks the court to approve his application and render a judgment that he is entitled to be naturalized. He also requests an award of attorney's fees and costs and a stay of removal.[1] On January 24, 2011, the respondents, who were sued in their official capacities, filed their Motion to Dismiss and Motion for Summary Judgment. Petitioner responded in opposition on February 4, 2011. On February 10, 2011, respondents filed their Reply. The Motion to Dismiss and Motion for Summary Judgment are ripe for review.

## II. Standard of Review

■ Pursuant to Title 8, United States Code, Section 1421, a person whose application for naturalization is denied, after a hearing before an immigration officer, "may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.* Because the standard of review is de *novo,* deference to the USCIS determination under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is not applicable. *See Mobin v. Taylor,* 598 F.Supp.2d 777, 780 (E.D.Va.2009); *see also O'Sullivan v. U.S. Citizenship and Immigration Servs.,* 453 F.3d 809, 812 (7th Cir.2006); *see generally Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 (finding that, when a federal statute is silent or ambiguous with respect to a specific issue, a court should defer to an agency's position so long as it is "based on a permissible construction of the statute").

The Federal Rules of Civil Procedure govern the district court's review of a denial of an application for naturalization. *See* Fed.R.Civ.P. 81(a)(3) (indicating that the

---

1. According to respondents, "On December 7, 2010, the Arlington, Virginia Immigration Court ordered petitioner removed from the United States based upon his violation of. the Immigration and Nationality Act for the commission of an aggravated felony ... as well as for a controlled substance violation." Mem. in Supp. of Mot. to Dismiss 6 n. 3, ECF No. 8. Respondents also note that an administrative appeal of his removal order is currently pending. *Id.*

Federal Rules of Civil Procedure "apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions"). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for relief for "failure to state a claim upon which relief can be granted." In order to survive a Rule 12(b)(6) motion to dismiss, a petition must aver "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plausibility standard is not equivalent to a probability requirement, but the plaintiff must plead more than a "sheer possibility" that he is entitled to relief. *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted). Although the court will accept as true the factual allegations in a petition, the court need not accept as true legal conclusions that are couched as factual allegations. *See id.* at 1949–50.

### *III. Discussion*

■ A district court's *de novo* review begins with an examination of the statutory requirements for naturalization. *Mobin*, 598 F.Supp.2d at 781. Generally, no person shall be naturalized in the United States unless such applicant:

(1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State ... in which the appli-

cant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) *during all the periods referred to in this subsection has been and still is a person of good moral character*, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a) (emphasis added). A person seeking naturalization on the basis of active-duty military service during a period of military hostilities pursuant to 8 U.S.C. § 1440 "shall comply in all other respects with the requirements of this subchapter," but there are exceptions, including that "no period of residence or specified period of physical presence within the United States or any State ... shall be required." *Id.* § 1440(b)(2).

With respect to the applicant's burden of establishing "good moral character," certain statutory bars preclude such a finding. Pertinent to this matter, no person shall be considered a person of good moral character "who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)." *Id.* § 1101(f)(8). An "aggravated felony" includes "illicit trafficking in a controlled substance ... *including a drug trafficking crime.*" *Id.* § 1101(a)(43)(B) (emphasis added). USCIS denied Moore's application because it interprets 8 U.S.C. § 1440 to require an applicant to establish that they have "been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character," 8 C.F.R. § 329.2(d), and Moore was twice convicted of the aggravated felony of Possession of Marijuana with Intent to

Distribute.[2]

Moore admits that his 2004 convictions were for aggravated felonies, *see* Petition ¶¶ 15, 43, ECF No. 1, and concedes that "a conviction for an aggravated felony after November 29, 1990 precludes a finding of good moral character for people who must meet the requirements of 8 U.S.C. § 1427." *Id.* ¶ 20 (citing 8 C.F.R. § 316.10(b)(1)(ii)). He challenges the denial of his application because he claims he bears no burden to prove good moral character under 8 U.S.C. § 1427. *See, e.g., id.* ¶ 16. He argues that:

> [G]ood moral character must be shown under 8 U.S.C § 1427(a) only in reference to a prescribed statutory period of residence. But 8 U.S.C. § 1440(b)(2) specifically exempts wartime veterans from having to meet any statutory period of residence. This means that the requirements of 8 U.S.C. § 1427(a) cannot be imposed upon wartime veterans seeking to naturalize under 8 U.S.C. § 1440 because the requirements of residence and good moral character ... are inextricably intertwined in 8 U.S.C. § 1427(a).

*Id.* ¶ 29. As stated in the Petition, "[t]he sole issue is whether USCIS erred in its imputation of a good moral character requirement to applicants for naturalization under 8 U.S.C. § 1440." Petition ¶ 42. In other words, the Petition predicates relief on Moore being exempt from the good moral character requirement as a matter of law. Accordingly, unless the court finds that Congress exempted applicants for naturalization under 8 U.S.C. § 1440 from the good moral character requirement in 8 U.S.C. § 1427(a), the Petition fails to state a claim upon which relief can be granted.

■ There is no binding Fourth Circuit precedent on this issue.[3] Other circuits have addressed the issue, though, and they found that applicants under § 1440 must meet the good moral character requirement in § 1427. *See O'Sullivan*, 453 F.3d at 812–16; *Santamaria–Ames v. INS*, 104 F.3d 1127, 1130 (9th Cir.1996); *see also Lopez v. Henley*, 416 F.3d 455, 457–58 (5th Cir.2005) (employing *Chevron* deference to find that § 1440 includes a good moral character requirement); *Nolan v. Holmes*, 334 F.3d 189, 198–202 (2d Cir.2003) (same). This court also concludes that Congress did not exempt wartime veterans seeking naturalization from satisfying the good moral character requirement in § 1427. In addition to the naturalization requirements set forth in § 1440, Congress required such applicants to "comply in *all* other respects" with the other naturalization requirements, including those in

---

**2.** USCIS also cited the fact that Moore was scheduled to be on probation for thirty years after release from incarceration. Probation is not a bar to establishing good moral character, but it may be considered in making that determination. 8 C.F.R. § 316.10(c)(1). Furthermore, persons cannot naturalize while serving a term of probation. *Id.* ("An application will not be approved until after the probation, parole, or suspended sentence has been completed."). The court need not reach the issue of whether USCIS impermissibly restricts § 1440 applicants from naturalizing on this basis, *see* Petition § 35, because Moore is barred from naturalizing since he does not possess good moral character on account of his aggravated felony convictions. *See infra* 13–15.

**3.** The Fourth Circuit has touched on the issue in two unpublished decisions, and, in both, suggested that applicants under § 1440 do bear a burden to establish good moral character. *See Ndongo v. Holder*, 348 Fed.Appx. 898, 899 n. * (4th Cir.2009) (per curiam) ("Ndongo, however, cannot meet the good moral character requirement for naturalization in light of his status as an aggravated felon." (citing 8 U.S.C. §§ 1427(a), (e), 1440; *O'Sullivan*, 453 F.3d at 812–16)); *Daly v. Gonzales*, 129 Fed.Appx. 837, 839 nn. 1 & 2 (4th Cir.2005).

§ 1427. 8 U.S.C. § 1440(b) (emphasis added).

To be sure, Congress exempted wartime veterans from certain requirements that other persons seeking to naturalize must bear. *Id.* Congress liberalized their naturalization privileges in a limited manner, though, leaving any requirements not specifically exempted intact. *See id.* (listing the four exceptions). Of importance here, § 1440 does not state that wartime veterans are excused from demonstrating good moral character.[4] Notwithstanding this fact, Moore highlights that § 1440 states that they need not meet the residency requirement, and that requirement is located within the same subsection as the good moral character requirement. On this basis, Moore asserts that the residency and good moral character requirements are "inextricably intertwined", and so, when Congress exempted wartime veterans from the former, it necessarily exempted them from the latter. *Id.* ¶ 29. The court disagrees with this interpretation. At a threshold level, the length of time one resides in the United States is hardly probative of his or her moral character. As such, it is illogical to suppose that because Congress does not expect wartime veterans to reside in the United States for a period prior to seeking naturalization, it necessarily does not expect them to possess good moral character.

Additionally, the residency exemption does not nullify the good moral character requirement even though the good moral character requirement incorporates "all the periods referred to in [§ 1427(a) ]." *Id.* § 1427(a)(3). The good moral character requirement employs any period mentioned in § 1427(a) as a temporal benchmark for evaluating the applicant's character. This discrete reference does not make the good moral character requirement conditional upon the applicability of any other naturalization qualification. *See O'Sullivan*, 453 F.3d at 815. Regardless, good moral character "is not [only] tied to a residency period." *Id.* Congress provided that the applicant must "still [be] a person of good moral character," notwithstanding any prior periods. 8 U.S.C. § 1427(a)(3). Nothing in either § 1427 or § 1440 evinces a Congressional intent to inextricably intertwine the requirements of good moral character and residency.

Furthermore, two features of § 1427 confirm that Congress intended that residency and good moral character be interpreted as separate requirements. First, Congress explicitly recognized that good moral character is its own qualification. In subsection (e), Congress specified that "in determining whether the applicant has sustained the burden of establishing good moral character *and the other qualifications ... specified in subsection (a)* of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application." *Id.* § 1427(e). In addition, the residency and good moral character requirements are in separate subdivisions within subsection (a).[5] Congress's election to position each requirement within its own subdivision indicates that Congress intended that they be viewed as distinct requirements. *Cf. United States v. Naftalin*, 441 U.S. 768, 774 n. 5, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979) (noting that the "use of separate numbers to introduce each subsection" in a statutory provision can

---

4. Moore does not deny or contest that § 1440 contains no language excusing wartime veterans from proving they have good moral character. *See* Petition ¶ 21 ("In fact, [§ 1440] makes no reference to good moral character.").

5. *See supra* 789.

"reaffirm conclusions drawn from the words themselves"). Congress expressed its intent substantively and structurally.

Moore also asserts Congress clearly did not intend a requirement of good moral character for wartime veterans seeking to naturalize "[b]ecause there is no good moral character requirement listed in 8 U.S.C. § 1440." Petition ¶ 26. In support, he highlights 8 U.S.C. §§ 1427, 1430, and 1439 as "[o]ther naturalization statutes within the Immigration and Nationality Act [that] do require a showing of good moral character." *Id.* This claim is unavailing. Congress made clear that § 1440 was not to be read in isolation. It incorporates other naturalization requirements unless otherwise noted, *see* 8 U.S.C. § 1440(b), and there is no provision exempting wartime veterans from compliance with § 1427(a). Rather, Congress exempted such persons from compliance with a discrete subset of that provision: the residency requirement.

Moreover, contrary to Moore's characterization, §§ 1430 and 1439 do not themselves require good moral character. Indeed, they undermine his position. Like § 1440, § 1439 exempts certain persons seeking naturalization from the residency requirement. *Id.* § 1439(b)(1) (exempting currently serving service members). Unlike § 1440, § 1439 prescribes the method of proof of moral character for such applicants. *Id.* § 1439(e) (providing that moral character "shall be proved by duly authenticated copies of the records of the executive departments having custody of the records of such service"). The fact that Congress made this provision without including another one that explicitly required good moral character shows that it intended § 1427(a)'s good moral character requirement to apply by reference. *See id.* § 1439(b) (providing that an applicant "shall comply in all other respect with the requirements of this subchapter," with exceptions). Section 1430 does not even reference good moral character, but it does demonstrate that, by subdividing § 1427(a), Congress intended that the residency requirement should be viewed as distinct from the good moral character requirement. *Id.* § 1430(a) (noting that "any person whose spouse is a citizen of the United States ... may be naturalized upon compliance with all the requirements of this subchapter *except the provisions of paragraph* (1) *of section 1427(a)*." (emphasis added)). If Congress intended to inextricably intertwine the requirements in § 1427(a), there would have been no need to dictate an exemption by reference to a subdivision within subsection (a), rather than by reference to subsection (a) itself.

 The court **FINDS** that Congress requires wartime veterans seeking naturalization under 8 U.S.C. § 1440 to satisfy the good moral character requirement in 8 U.S.C. § 1427. This purely legal question is the only basis upon which Moore seeks relief.[6] Moore did not seek review of any factual aspect of the denial of his application. Indeed, Moore admits that he was convicted of aggravated felonies, which is a complete bar to naturalization for applicants required to prove good moral character. 8 U.S.C. §§ 1101(f)(8), 1427(a). Considering that admission, and having found that Moore's claim is predicated on an incorrect statement of the law, the court

---

6. Contrary to Moore's characterization, the court, in considering a motion to dismiss, does not view a "claim" in the light most favorable to the petitioner. Mem. in Opp. to Mot. to Dismiss 5, ECF No. 11. The court views the facts as such, *see Venkatraman v. REI Systems, Inc.,* 417 F.3d 418, 420 (4th Cir.2005), but it shows no deference to either party's legal conclusions. *See Iqbal,* 129 S.Ct. at 1949.

**DISMISSES** the Petition for failure to state a claim.[7]

### IV. Conclusion

For the foregoing reasons, the court **GRANTS** the respondents' Motion to Dismiss and **DISMISSES** the Petition. Accordingly, respondents' Motion for Summary Judgment is **DENIED** as moot. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Final Order to counsel for the parties.

**IT IS SO ORDERED.**

**7.** In their briefs, the parties argue over whether the court has jurisdiction to stay removal and, if it does not, whether it can enjoin execution of the order of removal. *See supra* note 1 and accompanying text. The court does not address either issue, as it grants the Motion to Dismiss.